# WILSON *v.* LAMBERT.[1]

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 164. Argued December 13, 14, 1897. — Decided January 3, 1898.

Courts of equity have jurisdiction to hear the complaints of those who assert that their lands are about to be assessed and subjected to liens by a board or commission acting in pursuance of the provisions of a statute which has been enacted under the forms of law, but which, it is claimed, is unconstitutional, and therefore does not avail to confer the powers sought to be exercised.

---

[1] The docket title of this case is Craighill & others *v.* Lambert & others.

The sixth section of the act of September 27, 1890, c. 1001, 26 Stat. 492, authorizing the establishment of Rock Creek Park in the District of Columbia, does not violate the provisions of the Constitution of the United States, and is valid.

IN January, 1895, Mary Van Riswick, widow, and Avarilla Lambert, and Martina Carr, children and heirs of John Van Riswick, deceased, filed a bill of complaint in the Supreme Court of the District of Columbia against the Commission under the Rock Creek Park Act of September 27, 1890, c. 1001, 26 Stat. 492, seeking to restrain the said Commission from assessing lands of the complainants for any portion of the cost and expenses of locating and improving the Rock Creek Park, for the alleged reason that the sixth section of the said act, under which the Commission was acting in proposing to make such assessment, was unconstitutional and void.

The cause was so proceeded in that, on September 30, 1895, the Supreme Court of the District rendered a final decree as prayed for in the bill. From that decree an appeal was taken to the Court of Appeals of the District of Columbia, and by that court, on March 17, 1896, the decree of the Supreme Court of the District was affirmed. The cause was then brought to this court on appeal.

*Mr. Solicitor General* for appellants.

*Mr. Tallmadge A. Lambert* and *Mr. John B. Henderson* for appellees.

MR. JUSTICE SHIRAS, after making the above statement, delivered the opinion of the court.

Courts of equity undoubtedly have jurisdiction to hear the complaints of those who assert that their lands are about to be assessed and subjected to liens by a board or commission acting in pursuance of the provisions of a statute which has been enacted under the forms of law, but which is unconstitutional, and therefore does not avail to confer the powers sought to be exercised. *Dows* v. *Chicago,* 11 Wall. 108; *Union Pac.*

*Railway* v. *Cheyenne,* 113 U. S. 516; *Ogden City* v. *Armstrong,* 168 U. S. 224; Dillon's Mun. Corporations, vol. 2, § 922, 4th ed.

Accordingly if, in the present case, the sixth section of the act of September 27, 1890, entitled "An act authorizing the establishment of a public park in the District of Columbia," and upon which the defendants rely for their authority to act, is, indeed, unconstitutional and void, for all or any of the reasons urged against it, we think that the complainants are entitled to a remedy by a direct proceeding in a court of equity. For the reasons mentioned in the cases above cited and in numerous others, the remedy at law could not be regarded as plain and adequate.

The validity of the section in question has been heretofore considered and determined by this court in the case of *Shoemaker* v. *United States,* 147 U. S. 282. The objections which in that case were ably but ineffectually urged were, in the main, those of which we now hear. It is true, however, that the question there arose incidentally and by way of argument. Persons whose property was made liable to assessment for special benefits were not ostensible parties to the cause; nor was the question raised by any special assignment. Hence this court, though undoubtedly called upon to consider the validity of the act as a whole, and in all its parts and sections, did not deem it necessary to discuss the validity of the sixth section at any length. In view, however, of the fact that we are now confronted with a specific arraignment of the sixth section, and of the further fact that the courts below, in able opinions, have held that the section is fatally defective in form and substance, we have felt constrained to carefully reconsider the question.

It is obvious, and we understand it to be conceded, that neither the act, nor this particular part of it, can be assailed because the subject-matter is outside of the power of Congress. But, while the general power to legislate exclusively for the District of Columbia is not disputed, nor the competency of Congress, in the exercise of that power, to establish a public park, it is contended that, under the limitation upon

that power contained in the Fifth Amendment, protecting the citizen from being deprived of life, liberty or property without due process of law, Congress, when erecting a work which is expressly declared to be perpetually dedicated to the use and enjoyment of 'the people of the United States, should defray the cost thereof out of the funds of the entire nation. It is further contended in the brief of the appellees that a tax for raising a fund for such a purpose to be valid ought to be levied and apportioned as a direct tax, among the several States according to their respective numbers. This latter proposition, however, was not approved by the courts below, and we need not discuss it. *Craighill* v. *Van Riswick*, 8 D. C. App. 185.

The reasoning upon which those courts proceeded seems to have been that, upon general principles of constitutional law, when the works, whose cost is to be defrayed by taxation, are public, the public alone should pay for them, and the present case is compared to one where, upon the erection of a court house or post office, the private property of individuals adjacent to such structure should be specially taxed for the supposed greater convenience enjoyed of access thereto.

Upon a final analysis this proposition will be found to resolve itself into a denial of the validity of special assessments in any case where the work in question is undertaken by the public authorities, without the express assent or desire of the property holders. The effort made to distinguish between streets and highways, as constituting proper subjects of taxation for special benefits, and public parks, as matters of such a general nature as not to justify special assessment, does not appear to us to be successful. Legislation of this character, both in respect to its justice and its constitutional validity, has been thoroughly discussed by the judicial tribunals of nearly every State in the Union. We shall briefly notice a few of the leading cases.

By a statute of 1875 a board of park commissioners were authorized to locate and lay out within the city of Boston a public park, to take such lands as the board should deem desirable therefor, and to assess upon any real estate in Bos-

ton which, in the opinion of the board, should receive any benefit or advantage from such locating and laying out, beyond the general advantages to all real estate in the city, "a proportional share of the expense of such location and laying out." The board purchased a large tract of flats, over part of which the tide flowed, the rest being marsh, and proceeded to lay out avenues and to fill them with gravel; and when but a small part of the area was filled, and none of the avenues were completed, passed an order declaring that they had taken, and did thereby take and create a public park, certain land, being in fact that already purchased, and also passed a further order reciting that, whereas by the previous order a park was located and laid out, they laid an assessment upon certain lands benefited thereby. It was held by the Supreme Judicial Court of Massachusetts, on a petition for a writ of certiorari, by the owners of estates so assessed, to quash the assessment, that the park was laid out within the statute, and that the court could not say, as matter of law, that the estates of the petitioners had not been benefited by what had been done at the time the assessment was made. *Foster* v. *Park Commissioners of Boston*, 133 Mass. 321; *Holt* v. *Somerville*, 127 Mass. 408.

In 1834, in pursuance of authority given by statute, the common council of the city of Albany directed the opening of a public square in that city. It was held by the Supreme Court of the State of New York that the taking the grounds of individuals in a city, to convert into a public square, is taking property for public use as much so as if such grounds were converted into a street; and the fact of the damages being assessed upon the owners of adjoining property, instead of being levied as a general tax upon the city, is no evidence that the property is not taken for public use. In the opinion it was said by Chief Justice Savage:

"The second reason assigned against the constitutionality of these proceedings is that the purposes for which the property is thus taken are not public, because the benefit is limited to and the expense assessed upon a few individuals. Private property is taken for public use when it is appropriated to the

common use of the public at large. A stronger instance can not be given than that of a lot of an individual in a city converted into a street; the former owner has no longer any interest in or control over the property, but it becomes the property of the public at large, and under the control of the public authorities. A public square depends on the same principle; it is for public use, whether it is intended to be travelled upon or not. The mode of compensation for such property is not important. It was formerly out of the public purse; but there is no injustice in requiring those individuals to make compensation who receive from the improvement an equivalent or more in the enhanced value of their own adjacent property; and whether the number is large or small does not affect the question." *Owners of Ground* v. *Albany*, 15 Wend. 374.

So, in 1871, it was held by the Court of Appeals of New York, in the case of the erection of a public park in the city of Brooklyn, that lands taken for such a purpose are taken for a public use, and the right to assess benefits upon adjacent property was assumed as unquestionable. *Brooklyn Park Com.* v. *Armstrong*, 45 N. Y. 234; *In re New York Central Park*, 63 Barb. 282; *S. C.* 99 N. Y. 569. The validity of laws authorizing the condemnation of lands for the purpose of public parks has been affirmed by the Supreme Court of Illinois, *People* v. *Williams*, 51 Illinois, 63; *Cook* v. *South Park Com.*, 61 Illinois, 115; *West Chicago Park Com.* v. *Western Union Tel. Co.*, 103 Illinois, 33; and by the Supreme Court of Pennsylvania, *Mercer* v. *Pittsburgh, Fort Wayne & Chicago Railroad Co.*, 36 Penn. St. 99; and by the Supreme Court of Missouri, *St. Louis Co.* v. *Griswold*, 58 Missouri, 175. Numerous other cases to the same effect will be found collected in Dillon's Mun. Corp. vol. 2, sec. 643, 4th ed.

That the act dedicates and sets apart this park " for the benefit and enjoyment of the people of the United States " does not, as we think, make it so far a work *sui generis* as to take it out of the range of the principles of the foregoing cases. The residents and property holders of the District of Columbia must be regarded as coming within the class of beneficiaries;

and, so far from being injured by the declaration that the park shall also have a national character, it is apparent that thereby the welfare of the inhabitants of the District will be promoted. Whatever tends to increase the attractiveness of the city of Washington, as a place of permanent or temporary residence, will operate to enhance the value of the private property situated therein or adjacent thereto.

If, then, there be no solid ground of distinction between other works of public improvement and the public park designed by this legislation, as proper subjects for the application of the rule of assessment for special benefits, it will not be necessary for us to enter at large upon the subject apart from that supposed distinction. That has been so recently and so fully discussed by this court in the case of *Bauman* v. *Ross*, 167 U. S. 548, that nothing remains to be added. It may be proper to observe that the decision in that case was not announced till after the judgment in the courts below in the present case had been entered.

Having reached the conclusion, then, that the sixth section of the Rock Creek Park Act is not invalid for want of conformity to constitutional principles, we think it follows that the decrees of the courts below should be reversed, and the bill of complaint be dismissed.

The other objections, so forcibly dwelt on, are all questions of construction and administration, and should be permitted to arise and be determined in the regular procedure of the court to which Congress has assigned the duty of carrying the provisions of the act into effect. It may turn out that the practical difficulties anticipated may disappear when dealt with by that court, to which power is given to "hear and determine all matters connected with said assessment, and to revise, correct, amend and conform said assessment, in whole or in part, or order a new assessment." It does not yet appear that these appellees will, when final action shall have been taken, have any substantial grounds of complaint. The difficulties of construing the act are not necessarily in the act itself, but in its application to the subject-matter. Its provisions are somewhat vague and obscure; and it is possible that further legis-

lation may be found requisite to carry out the intentions of Congress. But such questions are not now before us for determination. Should errors supervene in the administration of the act, parties affected will have redress by appeal.

We adopt the observation made in the dissenting opinion in the Court of Appeals : " There can be no reason or propriety in appealing to a court of equity to restrain proceedings that are being conducted in other courts, competent to construe the statutes under which they act, and to decide every question that may arise in the course of the proceeding. To allow litigations to be thus diverted tends to the multiplication of litigation, and the production of unnecessary delay and expense — to say nothing of the unnecessary vexation to parties."

*The decree of the Court of Appeals is reversed ; and the cause is remanded with directions to said court to reverse the decree of the Supreme Court of the District of Columbia and to remand the cause to that court with directions to dismiss the bill of complaint.*