JOHN A. BRIGHTWELL, Respondent, v. KANSAS CITY, Appellant.

Kansas City Court of Appeals, January 30, 1911.

1. **MUNICIPAL CORPORATIONS: Parks and Boulevards: Tax-bills: Certificate of Purchase.** In an action against the city for damages for the failure of its treasurer to perform the purely ministerial act of issuing a certificate to the purchaser at a sale of property under an assessment levied for the maintenance of parks and boulevards. *Held*, that the city in levying the assessment was acting in a governmental and not in a ministerial capacity, and that plaintiff's cause of action was against the recalcitrant officer, and not against the municipality.

2. ———: ———. State and municipal legislation relating to the establishment and maintenance in large cities of public parks, boulevards, and playgrounds is founded on the conviction that such institutions are a public necessity (just as streets, sewers, police, and fire protection are necessary to the general public welfare) and not mere utilities of special local value.

3. ———: ———: **Sovereign Distinguished from Private Functions.** In planning parks and boulevards, in condemning the necessary land, and levying special taxes to pay for such land, the functions are those pertaining to sovereignty, but in the subsequent work required to convert raw land into parks and boulevards, the city acts in its private corporate capacity.

4. ———: **Legislative Distinguished from Ministerial Act.** In the characterization of a given municipal act, it is not enough to constitute such act legislative that it be found to relate in a general way to a function of government. If substantially it is of a local or corporate nature, it will be classed as ministerial.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover*, Judge.

REVERSED.

*John G. Park, A. F. Smith* and *I. D. Hook* for appellant.

(1) The action should have been brought against the city treasurer. a. For damages; b. By man-

damus. State ex rel. v. Green, 124 Mo. App. 80; 2 Abbott Municipal Corporations, 1613, 1614. State ex rel. v. Ashbrook, 154 Mo., 375; 3 Abbott, Municipal Corporations, 2472; Butler v. Moberly, 131 Mo. App. 172. (2) Kansas City is not liable. 2 Abbott, Municipal Corporations, 1098; Kansas City v. Ward, 134 Mo. 172; Willis v. Lambert, 168 U. S. 611; Shoemaker v. United States, 147 U. S. 282; Grading Co. v. Holden, 107 Mo. 305; Corrigan v. Kansas City, 211 Mo., 608; Young v. Railroad, 126 Mo. App. 69; 20 Am. and Eng. Ency. Law, 1195; 3 Abbott, Municipal Corporations, 2258. (3) The action is barred by the Statute of Limitations. Meyer v. Christopher, 176 Mo. 580; Ash & Gentry v. City of Independence, 103 Mo. App. 299. (4) The action should have been brought against the city treasurer for damages. Plaintiff's action is for damages for failure of the city treasurer to issue him certain certificates of purchase and it is not for money had and received by Kansas City.

*B. D. Davis* and *L. A. Laughlin* for respondent.

(1) No declarations of law were asked or given by the trial court. This court has decided that when an action at law has been tried by the court, without a jury, and no declarations of law are asked or given, the finding will not be reviewed by this court when there is any substantial evidence to support it. Corrigan v. Kansas City, 93 Mo. App. 173; Rice, Stix & Co. v. McClure, 74 Mo. App. 383; Life Ins. Co. v. Stone, 42 Mo. App. 383; Wood v. Land, 22 Mo. App. 425. (2) The first point made by defendant in its brief is that this action should have been brought against the city treasurer for damages. We take the position that when the property was knocked off to plaintiff, and he paid the purchase price, it then became the duty of the city to issue to plaintiff certificates of purchase. This was a mere ministerial duty, not requiring the exercise of the city's legislative

power, and entirely separate from its duties as a governmental agency.

JOHNSON, J.—This is an action to recover damages from the defendant city on the ground that it failed and refused to issue to plaintiff a certificate of purchase for land bought by him at a sale under a delinquent taxbill. In 1899 defendant levied a special assessment "upon all real estate, exclusive of improvements thereon, in the Westport Park District in Kansas City, Missouri, for the purpose of maintaining, adorning, constructing, repairing, and otherwise improving parks, parkways, boulevards and avenues located in Westport Park District," etc. A number of property owners in the district refused to pay the assessments and in November, 1899, the city sold the property of the delinquents and at this sale plaintiff purchased a lot for which he paid the city $32.29, and became entitled to a certificate of purchase.

No certificate was issued and in December following, certain property owners in the district brought suit in the circuit court of Jackson county against the city, the city treasurer and the purchaser at the sale to cancel and set aside the assessment and the sales thereunder on the ground that the proceedings were in violation of the Consittution of the state, and obtained a temporary injunction restraining the city and its treasurer from issuing certificates to the respective purchasers. Plaintiff was one of the purchasers against whom the injunction was issued. The suit was not finally tried in the circuit court until 1905, when a trial resulted in a judgment for the defendants and the injunction dissolved. The property owners appealed to the Supreme Court and in 1908, that court affirmed the judgment holding the proceedings constitutional and the assessment valid. [Corrigan v. Kansas City, 211 Mo. 608.]

Plaintiff made repeated demands of the different city treasurers for a certificate of purchase but these were refused and in 1909, he instituted the present suit for damages against the city alone. A jury was waived and after hearing the evidence the court rendered judgment for plaintiff for $131. Defendant appealed.

As we view the case the decisive question at issue is whether the city should be held to respond in damages for the failure of its treasurer to perform the purely ministerial act of issuing a certificate to a purchaser at a sale of property under an assessment levied for the maintenance of parks and boulevards. And the answer to this question, in our opinion, depends on the answer to be given another question, viz.: In levying the assessment was the city acting in a governmental or a ministerial capacity? If it was acting in the former capacity it cannot be held liable for the torts of its officer in refusing to perform a ministerial act the law charges him with the duty of performing, but if the city acted in the latter capacity, it must be held responsible for such torts.

Pertinent statutory provisions are as follows:

"Sec. 6067. (Rev. Stat. 1899). *Parks, how established.*—Whenever any city desires to establish a park or pleasure grounds, the common council or mayor and board of aldermen of such city is hereby authorized and empowered to purchase or condemn lands in such city or within one mile thereof for that purpose, and shall by ordinance describe the metes and bounds of such lands to be purchased or condemned."

"Sec. 6075. *Power to establish roads, etc.*—Such board of park commissioners shall have power and authority to establish, open, pave and otherwise improve, in such manner and with such material as they may deem proper, within such park district, all such roads, boulevards and avenues as they may determine to be necessary or proper and useful to the inhabitants of such park district; and, for these purposes, shall have

jurisdiction over and may take possession of such of the streets in such city as they may deem necessary to afford to the inhabitants of such city convenient means of access to such parks."

The charter of the city provided (Charter and Ordinances of Kansas City, 1898, sec. 5, art. X): "Said board of park commissioners shall have power, and it shall be its duty, to devise and adopt a system of public parks, parkways, and boulevards, for the use of the city and its inhabitants, and to select and designate lands to be used and appropriated for such purposes, within of without the city limits, and to select routes and streets for boulevards, . . . ."

Further the charter and ordinances provided that special assessments for parks and boulevards should be subject to the same rebates on payment, the same penalties for non-payment and should be collected and enforced in the same manner as general taxes levied by the city.

It is manifest that the state and municipal legislation relating to the establishment and maintenance in large cities of public parks, boulevards and playgrounds is founded on the conviction that such institutions are a public necessity just as streets, sewers, police and fire protection are necessary to the general public welfare. This view of the importance of such institutions and of their indispensibleness in large centers of population is supported by the weight of authority in this state and other jurisdictions and invests them with the charter and attributes of general public necessities to municipalities of classes to which large cities belong as distinguished from mere utilities of special local value.

In 2 Abbott on Muncipal Corporations, 1898, the author says: "The expenditure of public moneys for objects having for purpose the protection and betterment of the good morals and health of the people has

always been regarded not only legitimate but praiseworthy. The opportunity for diversion and amusement in the open air is an object of such character and may be effected through the establishment and maintenance of public parks and boulevards."

In Shoemaker v. United States, 147 U. S. 282, the court, speaking through Mr. Justice SHIRAS say: "In the memory of men now living, a proposition to take private property without the consent of the owner for a public park and to assess a proportionate part of the cost upon real estate benefited thereby, would have been regarded as a novel exercise of legislative power . . . there is now scarcely a city of any considerable size in the entire country that does not have such parks. The validity of the legislative acts erecting such parks, and providing for their costs has been unformly upheld . . . land taken in a city for public parks and squares, by authority of law, whether advantageous to the public for recreation, health or business is taken for a public use."

In Wilson v. Lambert, 168 U. S. 611, the same court speaks approvingly of a New York decision holding "that the taking the grounds of individuals in a city to convert into a public square, is taking the property for public use as much so as if such grounds were converted into a street; and the fact of the damages being assessed upon the owners of adjoining property instead of being levied as a general tax upon the city, is no evidence that the property is not taken for public use," and gives voice to the view that "the effort made to distinguish between streets and highways as constituting proper subjects of taxation for special benefits, and public parks, as matters of such a general nature as not to justify special assessments, does not appear to us to be successful."

Our own Supreme Court has this to say on the subject in Kansas City v. Ward, 134 Mo. l. c. 177: "Public parks in densely populated cities are manifest-

ly essential to the health, comfort, and prosperity of their citizens. It is universally conceded, and not disputed in this case, that such improvements are public use, within the meaning of the Constitution, for the purposes of which, the land of the citizen may be taken upon payment of a just compensation. County Court v. Griswold, 58 Mo. 175; Shoemaker v. United States, 147 U. S. 297, and cases cited."

Having ascertained that acquisition by the city of property for park and boulevard purposes was for the public good and the public use, we pass to the question of whether the city in the performance of such service to the public was acting as an agency of the government or in its private or corporate character for securing a mere special local advantage. As to acts of the latter character the rule thus is stated in 2 Dillon on Munic. Corp. (4 Ed.), sec. 980:

"The doctrine may be considered as established, where a given duty is a corporate one, that is, one which rests upon the municipality in respect of its special or local interests, and not as a public agency, and *is absolute and perfect,* and not discretionary or judicial in its nature, and *is one owing to the plaintiff,* or in the performance of which he is specially interested, that *the corporation is liable in a civil action* for the damages resulting to individuals by its neglect to perform the duty, or for the want of proper care or want of reasonable skill of its officers or servants acting under its direction or authority in the execution of such a duty; and, with the qualifications stated, it is liable, on the same principles and to the same extent, as an individual or private corporation would be under like circumstances. For illustration, if a city neglects its *ministerial duty to cause its sewers* to be kept free from obstructions, to the injury of a person who has an interest in the performance of that duty, it is liable, as we shall see, to an action for the damages thereby occasioned."

In the characterization of a given municipal act it is not enough to constitute such act legislative that it be found to relate in a general way to a function of government. If substantially it is of a local or corporate nature it will be classed as ministerial. We recognized and applied this test in Young v. Railroad, 126 Mo. App. 1, where we held the city liable for the negligence of servants cleaning streets. But even this test applied to the case in hand does not divest the municipal acts of condemning property for public use and providing for its payment of their real character as acts of a purely governmental nature.

There is a strong and, we think, perfect analogy between such acts and those relating to laying out a street or sewer and condemning property therefor. No one would have the hardihood to contend that such functions were not legislative and judicial in their nature and we perceive no difference between them and the functions in question. In the construction of a street or sewer the city acts ministerially and is liable for the torts of its servants, but in planning and procuring the land for such improvements, it acts as an agency of government and is not liable for the torts of its servants. So with its parks and boulevards. In planning them, in condemning the necessary land, and in levying special taxes to pay for such land, the functions are those pertaining to sovereignty, but in the subsequent work required to convert raw land into parks and boulevards, the city acts in its private corporate capacity.

Plaintiff has no cause of action against the city. He was not without remedy but his action, whether at law or in equity, should have been against the recalcitrant officer and not against the municipality.

The judgment is reversed. All concur.