## THOMSON v. CITY OF DEARBORN.

1. TAXATION—EXEMPTION—OFF-STREET PARKING FACILITIES—PUBLIC SAFETY.

Off-street parking facilities, acquired by a home-rule city, are public lands used in the reasonable exercise of the police powers to promote public safety and are exempt from taxation under the general property tax act (Const 1908, art 8, § 22; CL 1948, § 141.16; CLS 1954, § 211.7).

2. SAME—MUNICIPALLY-OWNED AND OPERATED PARKING LOT.

Statute, applicable only to cities, which required them to tax off-street parking facilities which they acquired and were thereunder authorized to lease to others, did not have the effect of removing city-owned and operated parking lot from tax-exemption provisions of the general property tax act, where no part of such lot has been leased to others (CL 1948, § 141.161; CLS 1954, § 211.7).

3. SAME—SPECIAL ASSESSMENT FOR OFF-STREET PARKING FACILITY—REMEDY OF TAXPAYER.

Plaintiff taxpayers in special assessment district for off-street parking lot, in home-rule city, who neither protested before

------

REFERENCES FOR POINTS IN HEADNOTES

[1] 51 Am Jur, Taxation § 557 et seq.
[2] 51 Am Jur, Taxation § 563.
[6] 51 Am Jur, Taxation § 1218 et seq.
[7] 51 Am Jur, Taxation § 1244.

the board of review nor instituted suit within 30 days after confirmation of the assessment, were not entitled to maintain suit to restrain imposition and collection of the assessment under record showing no fraud or bad faith on the part of the city council or city assessors (CL 1948, § 211.53; Dearborn City Charter, §§ 16.5, 16.6, 16.14).

4. Same — Special Assessment — Benefits — Off-Street Parking Facility.

Special assessment on plaintiffs' property within special assessment district for extension of existing home-rule city's off-street parking lot would not be set aside, where plaintiffs failed to show their assessments were not proportionate to the benefits to their properties and made no showing that the existing parking lot had benefited by the extension (Dearborn City Charter, §§ 15.10, 16.3).

5. Same—Off-Street Parking Collections—Salaries of Municipal Employees.

It was not a misuse of public moneys, entitling a taxpayer to maintain a suit for injunction, for home-rule city treasurer not to cross-cost salary of employee who collected moneys from parking meters, where the employee's salary was paid from the general revenues of the city and not from the parking revenues (Dearborn City Charter, § 8.6).

6. Same—Action by Taxpayers—Injunction—Burden of Proof— Increased Taxation.

Taxpayers seeking to enjoin the imposition of a tax must show substantial injury or loss as taxpayers through increased taxation and the consequences thereof.

7. Same—Action by Taxpayers—Parties—Injunction.

A private taxpayer, suffering no special grievance, is not a proper party plaintiff to a bill of complaint filed to restrain threatened official misconduct.

8. Costs—Public Question—Special Assessments for Home-Rule City's Off-Street Parking Facilities.

No costs are allowed in suit by taxpayers relative to use of special assessments of property for off-street parking facilities for home-rule city, a public question being involved.

Appeal from Wayne; Bohn (Theodore R.), J. Submitted January 9, 1957. (Docket No. 27, Calendar No. 47,005.) Decided October 7, 1957.

Bill by James Thomson, with John Brown and Wasil Gawara later joining, against the City of Dearborn, a municipal corporation, to compel placing revenue-producing parking lots on assessment rolls and to enjoin the use of general tax moneys in connection therewith. Bill dismissed. Plaintiffs appeal. Affirmed.

*James Thomson, in propria persona* and for other plaintiffs.

*Dale H. Fillmore,* Corporation Counsel, and *Ralph B. Guy, Jr.,* Assistant Corporation Counsel, for defendant.

VOELKER, J. In 1950 the city of Dearborn, a home-rule city, by ordinance provided a rather elaborate on-and-off-street system of municipal automobile parking facilities to be financed by self-liquidating revenue bonds. One of the off-street meter parking lots so established under this ordinance became known as the Calhoun parking lot. As time went on the city determined to enlarge this parking lot by extending it easterly, and in the spring of 1955 it acted to do so. To help pay for the new lands which had to be acquired by condemnation to enlarge the existing parking lot, the city levied a special assessment against abutting property to pay half the cost of obtaining the extra land. Neither the original parking lot nor the lands acquired to enlarge the same were placed on the general tax roll of the city, nor was any part of the special assessment levied against the abutting original parking lot.

The plaintiff Thomson is a resident owner of real estate in Dearborn, as are his 2 coplaintiffs, who in addition, unlike Thomson, are also the owners of property in the special assessment district. In May, 1955, the plaintiff Thomson filed his bill of complaint

against the city, which bill was later amended and re-amended to add his coplaintiffs, Brown and Gawara, and also to add a number of additional allegations and prayers for relief. The bill as finally amended sought, among other things, to stop the imposition and collection of the special assessment; to compel the city to put the Calhoun and all other municipal parking lots on the general tax roll; to enjoin the city from illegally using general tax moneys for the operation, maintenance, acquisition and administration of all off-street parking facilities, contrary to the revenue bond act of 1933, as amended;* for an accounting for all moneys spent illegally therefor; and for a further accounting by the city to itself for taxes owing by reason of its failure to put the Calhoun and other municipal parking lots on the general tax rolls.

As grounds for granting the relief prayed the plaintiffs alleged among other things as follows: that by exempting its parking lots from taxation the city was illegally depriving itself and other municipal units there and in the county of taxes needed for public purposes; that it thereby also illegally increased the tax burden on the plaintiffs and others; that it had proceeded contrary to the city charter, which requires public lands to be included in such a special assessment district; that no board of assessors had been created as required by charter; that section 1 of PA 1947, No 286 (CL 1948, § 141.161 [Stat Ann 1949 Rev § 5.2426(1)]), provides that, "Automobile parking facilities owned by a city and for the use of which a fee is charged, shall not be exempt from taxation;" that general tax moneys had been illegally diverted to pay the salary of a man in the city treasurer's office whose job it was to count and deposit collections from parking meters, all con-

---

* See CL 1948 and CLS 1956, § 141.101 *et seq.* (Stat Ann 1949 Rev and Stat Ann 1955 Cum Supp § 5.2731 *et seq.*).—Reporter.

trary to a charter provision of Dearborn that all expenses of operation, maintenance, acquisition and administration of public parking facilities must be paid from the revenues of such facilities; and finally that the operation of parking facilities was a pro-prietary rather than governmental activity and therefore that all public parking areas should be subject to general taxation.

The defendant city answered in substance that all city parking lots were properly exempt from general taxation; that the statute cited and quoted above, and pleaded by the plaintiffs, was inapplicable because the Dearborn parking system does not include structures leased in whole or in part for purposes other than automobile parking; that the plaintiff Thomson must fail because he did not own property in the special assessment district; that the other 2 plaintiffs, Brown and Gawara, must fail because they failed timely to do 2 things: one, appear and object to the special assessment; and two, contest the special assessment within 30 days of confirmation, as required by provisions of the charter; that plaintiffs' remedy, if any had once existed, was properly by way of mandamus; and that since plaintiffs had failed to appeal to the board of review and State tax commission over the exemption of parking facilities from taxes they could not now resort to any court for relief. The city also admitted that an employee in the office of the city treasurer counted and deposited parking-meter money and was paid from general funds, but denied any illegality, alleging that this was a proper duty of the treasurer's office and a proper administrative governmental function provided by charter and general law.

Prior to the hearing below the city filed its motion to dismiss on the principal grounds that the plain-tiffs had in their bill failed to make out a case for injunctive or other relief; that they had an adequate

remedy at law by mandamus to place off-street parking lots on the tax rolls; that they had failed to exhaust their administrative remedies on this score by appealing to the board of review and State tax commission; and that Thomson's 2 coplaintiffs had failed to pursue their remedies under the charter as to the special assessment.

Oral argument was heard on this motion on November 15, 1955, following which the chancellor below took the motion under advisement and proceeded to hear the case. Following the hearing the court denied any injunctive relief and dismissed the bill, on 3 main grounds: that the plaintiffs did not show sufficient injuries as taxpayers; that the public parking lots maintained by the city of Dearborn were properly exempted from general property taxation; that the abutting portion of the existing Calhoun parking lot did not need to be included in the special assessment. The court also found that there was no evidence in the record that any space in the Dearborn parking lots was leased or used for other than public parking purposes.

Some of the plaintiffs' contentions here have, in the meantime, been decided against them by our decision in *Thomson* v. *City of Dearborn*, 348 Mich 300, wherein we held that the State tax commission had properly denied the taxpayer's protest against the action of the city of Dearborn exempting its municipally-owned and operated parking lots from the assessment rolls for general taxes. We also held that this included the parking meters and fixtures on such lots necessary for their operation. We further there declared that the portion of the statute also depended on here by the plaintiffs for relief, section 1 of PA 1947, No 286 (CL 1948, § 141.161 [Stat Ann 1949 Rev § 5.2426(1)]), applied only insofar as any portions of the public parking lots were leased to private persons for commercial purposes, further point-

ing out that the leasing provisions of that act had been earlier held invalid by us in *Shizas* v. *City of Detroit,* 333 Mich 44. We adopt our holding and observations in the *Thomson Case* above cited, insofar as they apply to the issues presented in this case.

As for the remaining issues, we quote from the opinion below of the circuit judge. On the question of the validity of the special assessment and the exclusion of the existing abutting parking lot from the special assessment district, he had this to say:

"Under the charter of the city of Dearborn, which is in evidence in this case as exhibit 6, and sections 16.5, 16.6 and 16.14 thereof, property owners who are specially assessed for a public improvement are required to protest before the board of review and are required also to institute suit within 30 days after the confirmation of the assessment in order to maintain an action contesting its validity. PA 1893, No 206, § 53, as amended (CL 1948, § 211.53 [Stat Ann 1950 Rev § 7.97]), imposes a similar requirement. See *Haggerty* v. *City of Dearborn,* 332 Mich 304. Plaintiffs Brown and Gawara, the only plaintiffs owning property within the assessment district, neither complained to the board of review, nor did they pay the assessment under protest, nor did they institute this action within 30 days after the assessment was confirmed. The only exception to these requirements of protest is where a showing is made of 'fraudulent conduct amounting to a total abuse of discretion.' *Hack* v. *City of Detroit,* 322 Mich 558, 566. The record before this court contains no evidence as to fraud or bad faith on the part of the Dearborn city council or city assessors.

"Section 15.10 of the charter provides for the creation of special assessment districts, including benefited properties, for the financing of public improvements. Section 16.3 provides that after the creation of such district, the board of assessors shall be directed to assess against all lands within the district, including public lands. If the council determines, as

it may, that public lands are not benefited and does not include them within the special assessment district, they obviously need not be assessed. Plaintiffs have made no showing that the existing parking lot has been benefited by its extension, nor have they shown that the amount of the assessments levied against their properties is not proportionate to the benefit received, and the burden is on the plaintiffs to make such a showing. *Graham* v. *City of Saginaw*, 317 Mich 427, 435. The assessment complained appears to be valid and proportionately levied."

On the question of the alleged illegal diversion of general tax moneys to pay operation and maintenance costs which plaintiffs urge should instead be charged exclusively to the revenue from the parking lots, he had this, in part, to say:

"The only evidence in the record on this point is that the salary of 1 employee of the city treasurer's office, whose duties are to take care of the money received from the parking meters, is paid out of general tax revenues. Under section 8.6 of the charter, the city treasurer is obliged to receive and account for all moneys coming into the city. According to the testimony of Mr. Floyd Pohl, C.P.A., and auditor for the city of Dearborn, it is not the practice in municipal accounting to cross-cost between departments of government. The treasurer's office has a specific duty in connection with moneys of the city and this is a duty to the public generally. It performs a public function in receiving and accounting for this money and it is not necessary in the court's view that charges be made to the different departments for which the money is collected. The testimony also indicates that to require otherwise would as a practical matter cost the city more, by necessitating the hiring of new accountants, than the salary of the 1 employee in the treasurer's office.

"The plaintiffs have not shown a misuse of public moneys in connection with the operation of the municipal parking lots."

The court also found and held that the plaintiffs did not show sufficient injury as taxpayers to maintain their suit, upon the authority of *Menendez* v. *City of Detroit,* 337 Mich 476; and *Nichols* v. *State Administrative Board,* 338 Mich 617.   See, also, *Cleveland* v. *City of Detroit,* 324 Mich 527 (11 ALR 2d 171).

We think the learned judge reached a right result for the right reasons and that his decision must be affirmed.   No costs, a public question being involved.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, KELLY, CARR, and BLACK, JJ., concurred.