66 Wn.2d 558 (1965)
404 P.2d 453
CYRIL HEAVENS et al., Appellants,
v.
KING COUNTY RURAL LIBRARY DISTRICT et al., Respondents.[*]
No. 37395.
The Supreme Court of Washington, En Banc.
July 8, 1965.
Schweppe, Reiter, Doolittle & Krug, by Mary Ellen Krug, for appellants.
Charles O. Carroll and Jennings P. Felix, for respondents.
The Attorney General and Jane Dowdle Smith, Assistant, amicus curiae.
WEAVER, J.
Fundamentally, this action, commenced under our Uniform Declaratory Judgments Act (RCW 7.24), challenges the constitutionality[1] of Laws of 1961, chapter 162, which authorizes local improvement districts for public libraries.[2]
After trial, the court dismissed plaintiffs' complaint with prejudice but continued a temporary injunction in force against defendants, the King County Rural Library District and its trustees, pending appeal, providing plaintiffs file a $5,000 bond. The bond was filed.
The assignments of error on appeal also challenge the legal sufficiency of notice given pursuant to the statute,[2] and allege that the action taken by the King County Rural Library District was arbitrary and capricious.
*560 Defendant King County Rural Library District[3] was created January 4, 1943. RCW 27.12.040. Its management is vested in a board of library trustees. RCW 27.12.190. Except for the issue involved in the instant case, rural libraries are financed by general taxation. Based upon a budget submitted by the board of library trustees to the county commissioners, the commissioners may levy a tax of not more than two mills a year upon the property in the district for library service. RCW 27.12.050. Additional funds may be made available to library districts by taxation by a vote of the people pursuant to RCW 27.12.222, RCW 84.52.052 and RCW 84.52.056. It is not necessary to detail the manner and method by which additional funds may be made available. It is sufficient to point out that
Such levies shall be a part of the general tax roll and shall be collected as a part of the general taxes against the property in the district. RCW 27.12.050 (Italics ours.)
Laws of 1961, chapter 162 introduced into the tax structure of this state a new concept for financing library districts. It permitted library districts to form local improvement districts within all or part of the library districts. Section 2 of the act provides:
In any instance where the acquisition of land, buildings or capital equipment, or the construction of library buildings are of special benefit to part or all of the lands in the district [we note the legislature did not find that a library is of special benefit to land], the governing board of the library district shall have authority to include such lands in a local improvement district, and to levy special assessments under a mode of annual installments extending over a period not exceeding twenty years on all property specially benefited by any local *561 improvement, on the basis of the special benefits to pay in whole or in part the damages or costs of any such improvements ordered in such library district. Laws of 1961, ch. 162, § 2, p. 1759 et seq. (Italics ours.)
We need not set forth the statutory administrative and procedural requirements necessary to implement the statute. Parenthetically, it appears that most of them have been modified, changed, and expanded by Laws of 1963, ch. 80. RCW chapter 27.14. See footnote 2.
After the public hearing provided by the 1961 statute, all subsequent proceedings in connection with the local improvement, including but not limited to the levying, collection and enforcement of local improvement assessments, shall be in accordance with the provisions of law applicable to sewer district local improvement district improvements set forth in chapter 56.20 RCW as now or hereafter amended, .... Laws of 1961, ch. 162, § 4, p. 1762. (Italics ours.)
June 6, 1962, pursuant to the 1961 statute, the board of the King County Rural Library District adopted Resolution No. 1962-4. The resolution announced the board's intention to form a local improvement district (hereafter called "LID") to be known as the "Shoreline Library District No. 1." The boundaries of the LID were defined to include the area between the northern Seattle city limits (145th Street) and the King-Snohomish County line (205th Street) and between Puget Sound and Lake Washington and a line extending north from the lake.[4] We take judicial notice of the fact that the proposed district is extensive in area.
The property upon which the King County Rural Library District sought to complete a library building[5] is located at *562 approximately the geographic center of the proposed library LID district. Plaintiffs are owners of property within the proposed district.
At the outset we are met with the argument of the Attorney General "that no constitutional question is presently before the court" because the proper time to raise the question of constitutionality of a special assessment against specific real property is at the time of confirmation of the assessment roll assessing the alleged proportionate share of the cost of the local improvement against the property. State ex rel. Frese v. City of Normandy Park, 64 Wn.2d 411, 392 P.2d 207 (1964). We conclude that a constitutional question is before us.
[1] First, it is stated in Frese, supra (an action for writ of mandamus or prohibition),
the contention of appellants that the assessments on property within the LID will exceed the special benefits resulting from the proposed improvement, is sought to be raised prematurely and cannot be considered in this case.
With this we have no quarrel; there is an adequate remedy by appeal by a property owner once the assessment roll has been cast. RCW 56.20.080. Excessiveness of the assessment is not the question of the instant case. The question is the constitutionality of any special assessment for the purpose stated.
Second, the rationale of our Uniform Declaratory Judgments statute is sufficiently broad to permit one specially affected (as distinguished from one affected merely as a member of the general public) to challenge the constitutionality of the statute affecting him. RCW 7.24.020.
*563 Third, if plaintiffs are forced to wait to exercise the right of assessment roll review afforded by RCW 56.20.080, it would be "locking the barn door after the horse is stolen" for RCW 56.20.030 authorizes the board to proceed with the improvements after public hearing. Hence, the remedy by appeal from the assessment roll is inadequate for the purposes of the instant case.
[2] This case brings into sharp focus the constitutional difference between special assessments for local improvements inuring to the benefit of specific land and general ad valorem taxes levied for the benefit of the entire taxing district. A special assessment for local improvements is not a tax within the constitutional limitations upon the amount of taxation; nor is it a tax subject to the constitutional provision requiring uniformity and equality of taxation. State ex rel. Frese v. City of Normandy Park, 64 Wn.2d 411, 392 P.2d 207 (1964).
[3] Special assessments to pay for local public improvements benefiting specific land are of ancient lineage.[6] They have been held valid for the construction and improvement of streets, curbs, gutters, sidewalks, and for the installation of sanitary and storm sewers, drains, levees, ditches, street lighting, and water mains. Rhyne, Municipal Law 717. All such assessments have one common element: they are for the construction of local improvements that are appurtenant to specific land and bring a benefit substantially more intense than is yielded to the rest of the municipality. The benefit to the land must be actual, physical and material and not merely speculative or conjectural.
*564 In In re Shilshole Avenue, 85 Wash. 522, 537, 148 Pac. 781 (1915), the court said:
It is the basic principle and the very life of the doctrine of special assessments that there can be no special assessment to pay for a thing which has conferred no special benefit upon the property assessed. To assess property for a thing which did not benefit it would be pro tanto the taking of private property for a public use without compensation, hence unconstitutional. Though the right to levy special assessments for local improvements is referable solely to the sovereign power of taxation, our state constitution, article 7, § 9, expressly limits its exercise to assessments of property benefited.
In In re Jones, 52 Wn.2d 143, 324 P.2d 259 (1958), the court pointed out that it is "axiomatic that property not specially benefited by a local improvement may not be assessed." In In re Schmitz, 44 Wn.2d 429, 268 P.2d 436 (1954), the court held that the amount of the special benefits attaching to the property by reason of the local improvement is the difference between the fair market value of the property immediately after the special benefits have attached and its fair market value before they have attached.
In the last analysis a valid special assessment for a local improvement is merely compensation paid by the property owner for the improved value of his land. If there is no benefit, there can be no assessment. To hold otherwise would be to deprive the owner of property without due process of law in contravention of the fourteenth amendment to the federal constitution.
We accept counsel's statement that no other state has attempted to authorize the construction of a public library financed by local improvement district special assessments. We find, however, that other jurisdictions have held special assessments invalid when applied to analogous situations. The following are illustrative: a war memorial plaza, a public auditorium, a court house, public school buildings, water works. See Rhyne, Municipal Laws 718-19, and cases cited therein. They were held to be general improvements that should be financed by general taxation; they were not *565 "local" improvements which added a unique and peculiar benefit to land, so that they could be financed by special assessment.
The closest analogy to a public library LID is an LID for a public auditorium. Without dispute, both contribute to the culture of the members of the community. Can it be said that they create a public improvement which attaches to and increases the value of land adjacent to the improvement or within the confines of a large district? We do not believe so.
In Lipscomb v. Lenon, 169 Ark. 610, 276 S.W. 367 (1925), the Arkansas Supreme Court held unconstitutional an act authorizing the formation of a local improvement district in order to build a public auditorium. Paraphrasing the language of the Arkansas court, we believe it is plain that a public library is for the benefit of the members of the whole community individually and collectively who may be served by it; the library cannot and does not confer any peculiar or special benefit upon the land to be subjected to an LID special assessment. The Arkansas court continued:
If it could be said that such an improvement is essential to the progress and prosperity of the city and suburban communities, the contribution which an auditorium makes to such prosperity is general to the entire community and not peculiar and special to the real property in the city and outlying contiguous territory. Whether the building of an auditorium would be beneficial rather than harmful to the real property immediately contiguous thereto would be wholly problematical and dependent upon many contingencies, notably the character of the architecture and construction and the nature of the assemblies gathered there, etc. Certain it is there is no such similarity between an improvement district for the construction of an auditorium and improvement districts for the construction of roads, bridges, wharves, levees, drains, etc., as would bring the former in the category of the latter. In the former the benefit, at most, to the real property can only be incidental and of the most remote and general character, while in the latter, it must be, and is, a peculiar and special benefit to the real property taxed for its construction.
*566 In Wilson v. Lambert, 168 U.S. 611, 42 L.Ed. 599, 18 Sup. Ct. 217 (1898), the court refused to strike down a special assessment about to be levied in order to establish a public park in the District of Columbia. We find the case neither persuasive nor controlling. The argument based upon it is answered in Lipscomb, supra:
Then, too, a city park is a wholly different character of improvement from a city auditorium. A city park, properly kept and maintained, adds decidedly to the attractiveness, and hence, enhances the value, of the real property immediately contiguous thereto, and to the beauty of the whole city, considered as a corporate entity.
We believe the difference is obvious. A public park might well enhance the value of adjacent property.
[4] In conclusion, we agree with plaintiffs that
The construction of public libraries is a legitimate and laudable exercise of governmental power for the general education of the community at large, but libraries are not constructed primarily to enhance the value of the real estate surrounding them. For this reason their construction cannot constitutionally be financed by assessing the cost thereof against the adjacent real estate.
Were our conclusion otherwise, the rationale of Laws of 1961, chapter 162 and defendants' argument in support thereof, would result in revolutionary changes in the constitutional tax structure of this state.
In view of our conclusion it is not necessary for us to discuss the remaining assignments of error.
The judgment dismissing plaintiffs' complaint is reversed and the case remanded to the trial court with directions to enter judgment consistent with this opinion.
It is so ordered.
ROSELLINI, C.J., HILL, DONWORTH, OTT, HUNTER, and HAMILTON, JJ., concur. FINLEY, J. (dissenting)
The decision arrived at by the majority herein is not inevitably directed or absolutely required either by provisions of the state constitution or the constitution of the United States. Viewed realistically, *567 the decision involves a policy judgment, or a matter of judgment as to values.
The issue in this case is clear cut: If utilized for the establishment of a library, where does the local improvement district concept, device or mechanism fall on the legal spectrum of permissible and nonpermissible special assessments? The early case of Wilson v. Lambert, 168 U.S. 611, 42 L.Ed. 599, 18 Sup. Ct. 217 (1898), identified the poles of the spectrum. On the one end of the span are the clearly permissible uses of special assessments to cover the cost of installing roads, sewers, et cetera. There is no argument that those improvements add value to the adjacent land. On the other hand, there are certain improvements which have been held to be too general for assessment against property in the LID format. Wilson v. Lambert identified examples of the latter category as courthouses and post offices. My difference with the majority is that I believe a library is amenable to classification on the permissible side of the spectrum insofar as LID financing is concerned.
The use of local improvement districts to finance needed projects has not been limited to streets and sewers. Wilson v. Lambert, supra, upheld assessments for a park in Washington, D.C. Other state courts have also upheld assessments for parks. In re Improvement of Lake of the Isles Park, 152 Minn. 29, 188 N.W. 54 (1922); Brightwell v. Kansas City, 153 Mo. App. 519, 134 S.W. 87 (1911). Even more recently, local improvement districts have been created to deal with modern problems. In Northern Pac. Ry. Co. v. Grand Forks, 73 N.W.2d 348 (N.D. 1955), and Thomson v. City of Dearborn, 349 Mich. 685, 85 N.W.2d 122 (1957), the courts upheld assessments for the creation of off-street parking lots in the business district. See, also, City of Whittier v. Dixon, 24 Cal.2d 664, 151 P.2d 5, 153 A.L.R. 956 (1944).
I do not think the closest analogy to the present case is an LID for a public auditorium. It appears to me that the example of a public auditorium is somewhat in the category *568 of a straw man envisioned or created and then decried argumentatively by the majority opinion. Among other things, an auditorium is generally located in a business district, or at least removed from good residential property. Realistically, the validity of an LID for a public auditorium would seem to depend upon its location. If the auditorium was placed in a business section, then by analogy to the parking lot cases it would seem that an argument could even be made for sustaining the LID, because the auditorium conceivably could add value to the adjacent property. However, if the auditorium is placed in a surrounding of residential property, or near it, then it is highly likely that the resulting congestion of traffic and people will not add value to the property, and in fact the auditorium might reduce values.
Thus, to me the analogy of the public auditorium is not convincingly apt. I see a modern library as akin to a park, which has been repeatedly upheld as a proper subject for the LID approach and format. A library can fit aesthetically into a quiet neighborhood. The architecture, landscaping and parklike setting of modern library facilities compel the conclusion that the surrounding property is benefited by the improvement. I am convinced that any qualified appraiser of urban real estate, if asked whether an attractively constructed library facility would add appreciably to the market value of the reasonably adjacent real estate, would most likely answer in the affirmative.
Thus, for me the crucial test  i.e., benefit to the reasonably adjacent land  is satisfied. The majority opinion obliquely remarks that the local improvement district involved here is quite large. Since this appeal from a declaratory judgment does not deal with the reasonableness of the assessment, the size of the district is immaterial. The majority opinion correctly states that the issue here is the constitutionality of any assessment, but, as herein pointed out, the opinion still includes the size of the district as an important consideration in its decision. Since I can see direct, substantial monetary value added to the property of residents within at least walking distance, and, perhaps, *569 even moderate driving distance, I would hold the purpose of the local improvement district constitutional.
In summary, let me stress that the initial sanctioning or fundamental authority for the creation of this local improvement district is traceable, in fact is based upon, a 1961 enactment of the Washington legislature. This fact, I think, should be accorded greater judicial respect and weight, policywise, by this court. The majority asserts or concludes that the use of a local improvement district to finance library construction "would result in revolutionary changes in the constitutional tax structure of this state." This, I think, overstates the case. While the law and our Anglo-American jurisprudence are more idealistically describable in terms of evolution rather than revolution, the distinction between the two terms in this particular context is perhaps the rate of change or growth rather than no change or no growth as an essential characteristic of law and the jurisprudence of our times. It seems to me that legislative approval of the use of local improvement districts to finance libraries is a natural and appropriate step or development in the utilization of that financing mechanism, especially when the legislature had before it the examples of the past use of the mechanism to finance parks and off-street parking lots. Once again, I stress that this purported new use or adaptation of the LID was born in the legislative halls  the place at least preferable to most traditionalists (if there is a choice) and acceptable to realists respecting innovations to meet contemporary social needs and problems. I cannot say this statute is an unconstitutional use of the LID plan, that it should be judicially exercised or struck down, any more than I can say the new spring growth of a tree is repugnant to the rest of the tree, and, therefore, the new growth is to be lopped off.
For the reasons indicated, I dissent.
HALE, J., concurs with FINLEY, J.
October 14, 1965. Petition for rehearing denied.
NOTES
[*] Reported in 404 P.2d 453.
[1] The Attorney General of Washington filed a brief on appeal. See RCW 7.24.110.
[2] The statute was amended by Laws of 1963, ch. 80. The 1963 amendment is not applicable to the instant case. It changes the 1961 statute in a number of respects but does not change its ultimate purpose. At this time, a well-maintained set of the Revised Code of Washington (loose-leaf), does not contain the 1961 statute. The 1963 amendment is codified as RCW (1963 Supp.) 27.14. Revised Code of Washington Annotated, copyright 1964 by Bancroft-Whitney Company and West Publishing Co., contains the 1963 amendment codified as RCWA chapter 27.14 with reference to the 1961 statute under "Legislative History."

When necessary for us to refer to the statute under consideration, we must refer to the Laws of 1961, ch. 162.
[3] RCW 27.12.010. "As used in this act, unless the context requires a different meaning:

"...
"(3) `Library' means a free public library supported in whole or in part with money derived from taxation; and
"...
"(5) `Rural county library district' means a library serving all the area of a county not included within the area of incorporated cities and towns; ..." (Italics ours.)
[4] Subsequently the Richmond Beach area and Lake Forest Park were deleted.
[5] As background, we point out the following. Plaintiffs' complaint alleges:

"Prior to June 6, 1962, a group of private persons in King County Rural Library District lying north of the city of Seattle organized the Shoreline Public Library Incorporated, a nonprofit corporation, and attempted to establish a public library by public donation. To this end said corporation purchased land and partially constructed a building. When voluntary donations proved insufficient, said corporation requested the defendants to establish a local improvement district pursuant to RCW 24.14 and assess the property within such local improvement district for the balance of the cost of such library...."
Defendants admitted this allegation, except they denied "... any inference that the Resolution to establish ... [the] local improvement district was not as the result of the legislative determination of ... [the library board] that the area ... required library services which could only be provided by the construction of a permanent and centrally located building."
[6] Newby v. Platte Cy., 25 Mo. 258 (1857):

"The present tax, if we may consider it as one, operates upon a class of persons  the owners of the several tracts of land over which the road passes  is assessed against them in proportion to the benefit each derives from the improvement, and is exacted from them as their respective shares of contribution to the establishment of the road. We may remark, too, that taxation of this character has prevailed too long and too extensively to be treated as illegitimate, or denounced as legislative spoliation under the guise of the taxing power. It prevailed in England several centuries ago; and the assessments made there by the commissioners of sewers on the lands affected by their operations was taxation of this character. (28 Hen. VIII, chap. 5, sec. 5.)...."