RUEL et al., Appellants v. RAPID CITY et al., Respondents

(167 N.W.2d 541)

(File No. 10643. Opinion filed April 25, 1969)

**David O. Rude,** Rapid City, for plaintiffs and appellants.

**Bottum & Beal, George Beal** and **Dennis Marsh, Thomas P. Ranney,** Rapid City for defendants and respondents.

HOMEYER, Judge.

This declaratory judgment action attacks the constitutionality of Ch. 230, Laws of 1967, which purports to authorize municipal corporations to acquire and maintain public convention halls and to finance the cost thereof in whole or in part by special assessment of certain privately owned property within the assessment district. The plaintiffs are the owners of commercial prop-

erty in the City of Rapid City within the proposed district and bring the action for themselves and others similarly situated. Defendants are the city and a development corporation from whom it plans to acquire property to be remodeled for use as a convention center. The city has taken preliminary steps to avail itself of the provisions of the challenged statute. In addition to a declaration of unconstitutionality an injunction restraining the city from proceeding is sought. The plaintiffs have appealed from an adverse judgment.

From the record and briefs, as well as admissions made on oral argument, it appears the proposed assessment district is to consist of all privately owned real property within the city limits not exempted by the Act.[1] The argument is made that Rapid City by reason of its proximity to a natural vacation land in the Black Hills is ideally located to attract large state and national conventions; that it presently has housing and dining facilities adequate for people attending the conventions, but does not have a convention hall for meetings and banquets which is an absolute necessity before large conventions are scheduled; that the proposed convention hall with accommodations for about 3,000 delegates would be adequate for between 75 to 80% of all conventions in the United States; that it is a known fact that delegates generally take their families with them to conventions when held in vacation areas; that the increase in business generated by an influx of such conventioneers and their families would reflect itself in business profits which in turn would enhance real estate values and allow larger rentals, and thus specially benefit all nonexempt real property within the city. The property which is intended for use as a public convention hall is located near the downtown business center.

The Act recites that it is in addition to and not in exclusion of any power "now in effect or hereafter enacted" authorizing a municipal corporation to acquire, construct and maintain a pub-

---

1. Subsection (2) of Section 2 of the Act defines "Privately owned property" as all real property except that upon which is situated a one-family or two-family dwelling and which is used only for residential purposes which residential property shall be exempt from assessment.

lic convention hall. We have been unable to find any prior statute wherein specific authority was granted municipal corporations for such purpose although SDC 45.0202(14)[2] might include the requisite delegation of power. Other statutes permit the acquisition, construction, maintenance, and financing of public buildings which could be used as public convention halls in cooperation with various governmental units.[3] Such statutes, however, contemplate payment either from funds raised through general taxation or sources other than special assessment of real property.

We are not informed how or what proportion of the cost the city intends to spread against the property of appellants and others and we are told this is not an issue since when the assessment roll is prepared hearings will be held thereon and property owners will have the right to object and the right of appeal from decisions made. In an action to enjoin and restrain a municipal corporation from proceeding with a proposed special assessment, Chicago & N. W. Ry. Co. v. City of Redfield, 83 S.D. 450, 160 N.W.2d 640, we said: "The question of special benefit is * * * a matter of local concern in each case dependent upon the kind of public improvement proposed" and objections that property would not be specially benefited and proposed special assessments were unreasonable and confiscatory and deprived a railway company of property without due process of law should be asserted at the hearing for consideration of the assessment roll when "the governing body is given the authority to approve, equalize, amend, or reject the same."

Assuming some special benefit to real property from a public convention hall as envisioned by the defendants, we perceive a monumental task confronting the municipality to fairly and equitably apportion the cost thereof among the parties purportedly benefited within such guidelines as are con-

---

2. Power is granted to establish and maintain "a public gymnasium or public community house" when authorized by a majority vote of electors with a maximum levy of eight mills per year for construction and one mill per year for maintenance and to issue bonds therefor.

3. SDC 1960 Supp. 65.0714 et seq. (county, town, school district). See also SDC 1960 Supp. 41.0192 et seq. (armories)

tained in the Act. Nevertheless, in the case at bar we need not concern ourselves with apportionment of claimed special benefits since the question presented is the constitutionality of **any** special assessment for the purpose stated within the framework of the challenged Act.

The constitutional authority for the enactment of legislation to make local improvements and finance the cost thereof is found in Section 10, Article XI, which provides:

> "The legislature may vest the corporate authority of cities, towns and villages, with power to make local improvements by special taxation of contiguous property or otherwise. For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes; but such tax shall be uniform in respect to persons and property within the jurisdiction of the body levying the same."

In an early case, Winona & St. P. Ry. Co. v. City of Watertown, 1 S.D. 46, 44 N.W. 1072, in an opinion by Judge Corson, the court discussed the terms taxes, taxation and special assessments and said:

> "Taxes and taxation are understood to mean the taxes imposed by the government for state, county, city, or township purposes, and to provide funds for general expenses of the particular community or district for which the taxes are levied. Special assessments are understood to refer to money raised or levied for some local municipal purpose to which the funds so collected are to be specifically applied in making the local improvements. The assessment is not laid upon a whole community, but only on a small and defined part thereof; and, while a tax is levied upon all property of a state, county, city, or town without any reference to special benefits to the individuals taxed, special assessments are presumed to be made on account of special benefits to the property assessed, conferred by the improvements for which the special tax is levied."

 We believe it has been made clear by our decisions that the benefit resulting to private property from the construction of a local public improvement in order to be the basis for a special assessment, must be a **special benefit,** by which is meant **a benefit above and beyond that enjoyed in common with the public at large or the rest of the community.** Bailey v. Mayor and Commissioners of City of Sioux Falls, 28 S.D. 118, 132 N.W. 703; Haggart v. Alton, 29 S.D. 509, 137 N.W. 372. Assessments are special and local impositions upon property **within a limited area** which are necessary to pay for a local improvement and are imposed with reference to the special benefit which the property is supposed to have derived therefrom. C. A. Wagner Construction Co. v. City of Sioux Falls, 71 S.D. 587, 27 N.W.2d 916. However, such grant of power is limited by Section 13; Article VI, which prohibits taking of private property for public use without just compensation. This would be the result if special assessments were levied upon an owner's property regardless of special benefits to such property. Bailey v. Mayor and Commissioners of City of Sioux Falls, supra; Village of Norwood v. Baker, 172 U.S. 269, 19 S.Ct. 187, 43 L.Ed. 443; McQuillin, Municipal Corporations, 3d Ed., § 38.02. However, the constitutional requirement that all "taxation shall be equal and uniform" as applied to special taxation and special assessments for local improvements is met when they are uniform as to all property benefited by the local improvements for which they are imposed in proportion to the benefits conferred by such improvements. Haggart v. Alton, supra.

Critical to a disposition of the case at bar is whether a special assessment for a public convention hall can be considered a local improvement. If not, the statute under which the city intends to proceed is unconstitutional.

██ ██ A local improvement has been defined to be a public improvement which, by reason of its being confined to a locality, enhances the value of adjacent property as distinguished from benefits diffused throughout the municipality. City of Chicago v. Blair, 149 Ill. 310, 36 N.E. 829, 24 L.R.A. 412. In City of Waukegan v. DeWolf, 258 Ill. 374, 101 N.E. 532, 45 L.R.A.,

N.S., 918, Ann.Cas.1914B, 538, where the matter in question was construction of a viaduct across a ravine to connect otherwise separated sections of the city, the court said "an improvement is not a local improvement, within the meaning of the constitution and statute, merely because it is constructed in a particular locality, since every improvement has a particular location, and is also local in the sense of being nearer to some persons and property than to others * * * Such a rule would authorize a special assessment for every improvement in a municipality." The primary purpose of the improvement is largely determinative and classification depends "upon the nature of the improvement and whether the substantial benefits to be derived are local or general in their nature." Ibid. The court said the purpose of the viaduct was to restore **to the public** the use of the principal thoroughfare of the city and not to benefit adjacent property, although obviously adjacent property would derive some benefit, and hence it was not a local improvement. In the Waukegan case the proposed assessments ranged from $5.00 per front foot on lands contiguous to the improvement to 4 cents per front foot on lands remote from it and $15,000 was assessed against the city for public benefits. See also City of Chicago Heights v. Walls, 319 Ill. 411, 150 N.E. 241.

Counsel have not cited and we have been unable to find any case where a public convention hall was financed by a special assessment of property within a special assessment district. Purposes most closely analogous are a public auditorium, Lipscomb v. Lenon, 169 Ark. 610, 276 S.W. 367, and a public library, Heavens v. King County Rural Library District, 66 Wash. 2d 558, 404 P.2d 453, and in both instances special assessment was not permitted.

In Lipscomb the court recognized there were occasions when a spacious public auditorium would be necessary to accommodate large crowds such as congregate for a great political convention, or other conventions of various kinds, and "a suitable auditorium would indeed be a most desirable improvement and one that every progressive city should have for the convenience, comfort, and pleasure of the inhabitants of the city and its en-

virons. But plainly such an auditorium is for the benefit of the whole community who may be served by it individually and collectively, and it cannot and does not confer any peculiar or special benefit upon the real estate assessed and taxed for its construction and maintenance. If it could be said that such an improvement is essential to the progress and prosperity of the city and suburban communities, the contribution which an auditorium makes to such prosperity is general to the entire community and not peculiar and special to the real property in the city and outlying contiguous territory." The fact that part of the land in the assessment district was outside the city limits does not appear to us to have a determinative factor in the decision although commented on by the court.

Similarly in Heavens, while the construction of a public library was acknowledged as a legitimate and laudable governmental objective in the general education of the community at large, still it did not enhance the value of real estate around it and thus could not be constitutionally financed by assessing the cost thereof against adjacent real estate. To hold otherwise, the court said "would result in revolutionary changes in the constitutional tax structure of this state." We reach the same conclusion.

A public convention hall of the type contemplated would undoubtedly on occasion attract large groups of people to Rapid City. It is easy to visualize that it could be a boon to the economy of that city as well as to neighboring areas. Business generated by an influx of free spending nonresident conventioneers would be a welcome bonus to otherwise normal trade. Nevertheless, in our opinion, the benefit conferred by such a structure is general to the community and cannot be translated into a specific benefit to commercial and other non-exempt real estate within the city. The benefit to land to qualify for special assessment must be actual, physical and material and not merely speculative or conjectural.

Charles S. Ryhne in his text on Municipal Law, pages 717, 718, lists purposes for which special assessments have been approved and some for which they have been denied. He opines

no general rule can be stated when and when not a given improvement may be financed by a special assessment. When denied he says "The distinguishable feature * * * was * * the general character of the improvement * * * prevented the assignment of a special benefit to any particular property."

■ We see little similarity between public parks, Wilson v. Lambert, 168 U.S. 611, 18 S.Ct. 217, 42 L.Ed. 599; Winnetka Park Dist. v. Hopkins, 371 Ill. 46, 20 N.E.2d 58; see also McQuillin, Municipal Corporations, § 38.28, and public parking places; City of Whittier v. Dixon, 24 Cal.2d 664, 151 P.2d 5, 153 A.L.R. 956; Northern Pacific Ry. Co. v. City of Grand Forks, N.D., 73 N.W.2d 348; Crampton v. City of Royal Oak, 362 Mich. 503, 108 N.W.2d 16; Wing v. City of Eugene, Or., 437 P.2d 836, where special assessments have been permitted, and a public convention hall. In case of a park it is easy to conceive where a park will add beauty to a city and thus enhance values of private property situated therein and adjacent thereto. Likewise, adequate parking space in congested business areas specially benefits a limited area and may justify special assessments in some cases. However, in Safeway Stores v. City of Burlingame, 170 Cal.App.2d 637, 339 P.2d 933, where a store had more than adequate parking space and there was no benefit to be derived by its property from a proposed parking lot, power to levy a special assessment was denied. The court stated "the return to the property owner by way of benefit is, under our system of government, the basic foundation upon which this right to levy special assessments" and unless the owner is compensated "by the increased value of the property, then most manifestly we have a special tax upon a minority of the property owners, which tax is for the benefit of the public and which tax is special, unequal and ununiform".

■ Within the rule thus stated it is obvious that much real property within the proposed district by virtue of its location and the nature of its use could not possibly be specially benefited by a public convention hall and thus we must hold the challenged law unconstitutional.

Because of this conclusion it is not necessary for us to discuss other grounds urged as the basis for a declaration of unconstitutionality.

Reversed.

All the Judges concur.