#25312-a-JKM
**2010 SD 55**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

WADE and LISA HUBBARD, ET AL.,                    Plaintiffs and Appellees,

     v.

CITY OF PIERRE, SOUTH DAKOTA,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE KATHLEEN F. TRANDAHL
Judge

\* \* \* \*

CHARLES P. SCHROYER of
Schmidt, Schroyer, Moreno, Lee &
  Bachand, PC                                                       Attorneys for plaintiffs
Pierre, South Dakota                                              and appellees.

LINDSEY RITER-RAPP
ROBERT C. RITER, JR. of
Riter, Rogers, Wattier &
  Northrup, LLP                                                     Attorneys for defendant
Pierre, South Dakota                                              and appellant.

LARRY A. NELSON of
Frieberg, Nelson & Ask, LLP
Canton, South Dakota

E. JAMES HOOD of
Hood & Nies, PC                                                   Attorneys for amicus SD
Spearfish, South Dakota                                        Municipal League.

\* \* \* \*

ARGUED JANUARY 14, 2010

OPINION FILED **06/30/10**

#25312

MEIERHENRY, Justice

[¶1.]        Wade and Lisa Hubbard et al. (Petitioners) brought a declaratory judgment action against the City of Pierre, South Dakota.  The Petitioners sought to enjoin the City from imposing special assessments for curb, gutter, and driveway replacements as part of a street reconstruction project.  The Petitioners claimed that the City's special assessments were imposed in violation of the Fifth Amendment of the United States Constitution and Article VI, Sections 2 and 13 of the South Dakota Constitution.  The circuit court agreed and entered a declaratory judgment against the City and an injunction prohibiting the City from collecting the special assessments.  The City appeals.

## FACTS AND PROCEDURAL BACKGROUND

[¶2.]        In 2007, the City began a street improvement project on North Grand Avenue, East Dakota Avenue, and North Tyler Avenue.  The improvement project's primary purpose was to replace water mains, but it also involved reconstructing and resurfacing streets, replacing sewer mains, and replacing portions of curb, gutter, and driveways.  The Petitioners' residential properties were located on the streets affected by this project.

[¶3.]        Before the project began, City officials inspected each property's curb and gutter to determine its condition.  The officials determined that the curb and gutters' installation dates ranged from the 1930s to as recently as 2006.  The projects on Tyler and Dakota Avenues involved total reconstruction of the street but only partial reconstruction of the curb and gutter.  The City determined that the

project on North Grand Avenue required complete reconstruction of the street and the curb and gutter.

[¶4.]    In February 2007, the City proposed a resolution of necessity to "install, repair or rebuild curb and gutter, associated concrete work, and sidewalks on certain streets, avenues, and alleys in the City of Pierre, South Dakota" and to levy individual special assessments at a set rate per linear foot of reconstructed curb and gutter and a set rate per square foot of reconstructed driveway approaches. *See* SDCL 9-45-20. Owners of the abutting lots were notified. *See* SDCL 9-45-23. Several Petitioners, including property owners Wade Hubbard and Ben Orsbon, appeared at the City Commission meeting on February 27, 2007, to object to the proposed resolution of necessity regarding the special assessments. The Petitioners challenged the resolution, arguing that the assessments would constitute a taking of private property in violation of the United States Constitution and the South Dakota Constitution. The City Commission took no action at the February 27, 2007, meeting, but later adopted the proposed resolution without amendment on March 20, 2007. The resolution was not challenged by referendum or written protest. *See* SDCL 9-45-26.

[¶5.]    The reconstruction project proceeded as planned and was completed in the fall of 2007. The City filed its assessment roll on November 1, 2007, and set a public hearing for December 4, 2007. *See* SDCL 9-43-11; SDCL 9-43-14. The City assessed each lot the per linear foot cost for curb and gutter replacement and per square foot cost for driveway replacement. The Petitioners' counsel appeared at the public hearing and again challenged the constitutionality of the special

assessments. The City Commission approved the assessment roll and its publication. *See* SDCL 9-43-15; SDCL 9-43-25. On December 14, 2007, the City notified all affected property owners of the amount specially assessed against each lot. On January 2, 2008, the Petitioners filed a timely petition in circuit court challenging the special assessment. The Petitioners sought a declaratory judgment and permanent injunction against the City.

[¶6.]    The Petitioners challenged the City's decision to impose special assessments for replacing curb, gutter, and driveways. They contended that the City violated the Fifth Amendment of the United States Constitution and Article VI, Sections 2 and 13 of the South Dakota Constitution because the amount of the special assessments exceeded the benefits received. The Petitioners claimed replacing curb, gutter, and driveways gave no benefit to the abutting lots. Alternatively, the Petitioners argued that the City would have had to assess each lot based on the benefits received according to SDCL 9-45-32 rather than on the per linear foot cost of the construction authorized in SDCL 9-45-30. The Petitioners did not challenge the constitutionality of any statutes.

[¶7.]    The circuit court determined that either method of assessment – per linear foot or accrued benefits – required a showing of special benefits to the assessed property. The circuit court also concluded that the special assessments for the replacement curb and gutter constituted an unconstitutional taking in violation of the South Dakota and United States Constitutions and enjoined the City. The City appeals, claiming that the circuit court erred as follows: (1) by misinterpreting SDCL 9-45-30 and SDCL 9-45-32; (2) by not giving proper deference to the City's

decision to impose special assessments for replacement curb, gutter, and driveways, and by allowing general assertions to prevail over examination of each specific property before and after construction; and, (3) by concluding that the Petitioners did not receive a special benefit above and beyond that enjoyed in common with the public.

## ANALYSIS

*Application of Special Assessment Statutes SDCL 9-45-30 and SDCL 9-45-32*

[¶8.]　　　　Cities are given the power to apportion special assessments for local improvements against "property fronting or abutting upon the improvement." SDCL 9-43-5; SDCL 9-43-8.  In this case, statutes govern the methods of apportioning street improvements, including curb and gutter.  SDCL 9-45-30 provides assessment based on front footage:

> The cost of the improvement except the cost of street and alley intersections may be assessed to the property fronting or abutting on the improvement.  Such cost of each portion of the project on which the construction is by resolution substantially uniform shall be divided by the number of feet fronting or abutting on said portion of the project, and the quotient shall be the rate of *assessment per front foot* throughout said portion of the project on which such uniformity exists.

(Emphasis added.)  SDCL 9-45-32 provides assessment based on accrued benefits:

> In lieu of the method of apportionment prescribed in §§ 9-45-30 and 9-45-31, it may be provided in and by the resolution determining the necessity of any street improvement that the cost thereof shall be assessed against all assessable lots and tracts of land fronting or abutting thereon or lying within one-half block or three hundred feet thereof, whichever is less, according to the *benefits* determined by the governing body to *accrue to each of such lots and tracts* from the construction of the improvement.  In such event the governing body, in preparing, considering, and hearing objections to the assessment roll as provided in chapter 9-43, shall make such investigation as may

> be necessary and shall find and determine the amount in which each such lot and tract will be *especially benefited* by the construction of the improvement, and shall assess against each such lot and tract such amount, not exceeding said benefit as shall be necessary to pay its just portion of the total cost of the work to be assessed.

(Emphasis added.)

[¶9.]        The City primarily used the front foot method of apportionment in SDCL 9-45-30.  On appeal, the City argues that assessments using SDCL 9-45-30 require "no showing of special benefits."  The City relies on the different language used in the two statutes.  SDCL 9-45-32 expressly addresses the need to show an "especial benefit" to the adjoining property while SDCL 9-45-30 does not.  The City argues that including the special benefit requirement in SDCL 9-45-32 and excluding it in SDCL 9-45-30 indicates legislative intent not to require a showing of a special benefit if a city makes a special assessment under SDCL 9-45-30.  The City's counsel advanced this argument in its brief, but acknowledged at oral argument that under both statutes a property must receive a special benefit for a special assessment to be constitutional.  *See* Village of Norwood v. Baker, 172 US 269, 279, 19 SCt 187, 190-91, 43 LEd 443 (1898); Hawley v. City of Hot Springs, 276 NW2d 704, 705 (SD 1979).  Thus, the circuit court did not err by focusing on the underlying constitutional requirement that the Petitioners receive special benefits commensurate with the amounts they were specially assessed.

*Constitutional Requirements for Special Assessments*

[¶10.]        The constitutional analysis of special assessments stems from the constitutional provisions prohibiting the government from taking private property without just compensation.  *Norwood*, 172 US at 279, 19 SCt at 190-91.  The Fifth

Amendment of the United States Constitution provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use without just compensation." U.S. Const. amend. V. The South Dakota Constitution provides that "[p]rivate property shall not be taken for public use, or damaged, without just compensation, which will be determined according to legal procedure established by the Legislature[.]" S.D. Const. art. VI, § 13. Furthermore, the South Dakota Due Process Clause provides that "[n]o person shall be deprived of life, liberty or property without due process of law." S.D. Const. art. VI, § 2. The United States Supreme Court explained the application of the Fifth Amendment to a government's special assessments:

> In our judgment, the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation.

*Norwood*, 172 US at 279, 19 SCt at 191. Thus, if a local public improvement confers a special benefit on private property, a special assessment can be constitutionally imposed if the assessment does not exceed the benefit received.

[¶11.]       A public improvement is considered local if it benefits "adjacent property, as distinguished from benefits diffused throughout the municipality." Ruel v. Rapid City, 84 SD 79, 85, 167 NW2d 541, 544 (1969). The classification as a local improvement depends on the character and nature of the improvement. We have said, "[t]he primary purpose of the improvement is largely determinative and classification depends 'upon the nature of the improvement and whether the substantial benefits to be derived are local or general in their nature.'" *Id.* at 86,

167 NW2d at 544. If the project is general in nature, the cost cannot be assessed against adjacent property. If the project is local in nature, the cost can be assessed against the adjacent property but only if the property receives a special benefit. Whether a project is local or whether property receives a special benefit are factual inquiries. Subject to court review, a city's decision to impose a special assessment should be founded on those inquiries. *See Norwood*, 172 US 269, 19 SCt 187.

[¶12.]    The South Dakota Legislature has authorized municipalities to impose special assessments on landowners for local public improvements. *See* SDCL ch. 9-43; Brookings v. Assoc. Developers, Inc., 280 NW2d 97 (SD 1979). Special assessments are imposed "to defray the expenses of a local municipal improvement on the theory that the property has received special benefits from the improvements in excess of the benefits accruing to property or people in general." Nebco, Inc. v. Bd. of Equalization of City of Lincoln, 547 NW2d 499, 503 (NE 1996). This Court has previously described municipal special assessments:

> Special assessments are understood to refer to money raised or levied for some local municipal purpose to which the funds so collected are to be specifically applied in making the local improvements. The assessment is not laid upon a whole community, but only on a small and defined part thereof; and, while a tax is levied upon all property of a state, county, city, or town without any reference to special benefits to the individuals taxed, special assessments are presumed to be made on account of special benefits to the property assessed, conferred by the improvements for which the special tax is levied.

Winona & St. P. R. Co. v. City of Watertown, 1 SD 46, 44 NW 1072, 1073 (1890). Some public improvement projects may involve both general and local benefits. In those cases, only part of the cost of the project can be assessed against the adjacent

property owners, and the rest is funded by the city. *See* Des Moines Union Ry. Co.
v. City of Des Moines, 459 NW2d 271, 272 (Iowa 1990).

[¶13.]    A municipality's power to impose special assessments is limited by the
constitutional requirement that the project confer a special benefit on the assessed
property. In *Haggart v. Alton*, this Court stated that "it is settled by the decisions
of this Court, sustained by the great weight of authority, that special assessments . .
. [are] lawful and constitutional only when founded upon special benefits accruing
from the improvement for which the . . . assessment is laid." 29 SD 509, 137 NW
372, 375 (SD 1912). This statement is consistent with the United States Supreme
Court's holding in *Norwood*:

> It is one thing for the legislature to prescribe it as a general rule
> that property abutting on a street opened by the public shall be
> deemed to have been specially benefited by such improvement,
> and, therefore, should specially contribute to the cost incurred
> by the public. It is quite a different thing to lay it down as an
> absolute rule that such property, whether it is in fact benefited
> or not by the opening of the street, may be assessed by the front
> foot for a fixed sum, representing the whole cost of the
> improvement, and without any right in the property owner to
> show, when an assessment of that kind is made, or is about to be
> made, that the sum so fixed is in excess of the benefits received.

172 US at 279, 19 SCt at 190-91.

[¶14.]    Determining whether a project confers special benefits requires a
finding that the assessed property receives a benefit *above and beyond* or *differing
from* the benefit enjoyed by the general public. In *Hawley*, this Court set out the
applicable law and constitutional requirements for special assessments in South
Dakota. *Hawley* recognized that "[s]pecial assessments can be sustained only upon
the theory that the property assessed receive some special benefit from the

-8-

improvement differing from the benefit that the general public enjoys." 276 NW2d at 705. In *Ruel*, this Court said that a special benefit had to be "above and beyond that enjoyed in common with the public at large or the rest of the community." 84 SD at 85, 167 NW2d at 544 (1969). [1]

[¶15.]    Whether a property receives a special benefit above and beyond or differing from the general public is often driven by opinion and conjecture of the property owner on the one hand and the city on the other. *See Hawley*, 276 NW2d at 707. This Court has said that the special benefits must "be actual, physical and material and not merely speculative or conjectural." *Ruel*, 84 SD at 87, 167 NW2d at 545. Even so, this Court has recognized that an "exact and actual monetary benefit" to property may "be difficult to measure and at most can only be estimated with a fair degree of exactness." *Hawley,* 276 NW2d at 706. One obvious indicator that property receives a special benefit is if the public project enhances its market value. *Id.* "Future prospects and reasonable expectations of the future use" may be another indicator. *Id.* Other courts have found a special benefit when the property realizes aesthetic enhancement. *See* Town of Tiburon v. Bonander, 103 CalRptr3d 485, 180 CalApp4th 1057 (2009); City of Winter Springs v. State, 776 So2d 255 (Fla 2001); *Des Moines Union R*y., 459 NW2d 271.

[¶16.]    When a special assessment is challenged in circuit court, a city's findings are presumed correct. *Hawley*, 276 NW2d at 706. The property owner "has

---

1.    In *Ruel*, the challenge involved whether building a convention center was a local improvement. This Court held that building a convention center was not a local improvement because its benefits to the public were greater than the benefits to the adjacent property. 84 SD at 88, 167 NW2d at 546.

the burden of going forward with evidence sufficient to overcome the presumption" as well as the ultimate burden of persuasion. South Dakota's rule on presumptions "imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption." SDCL 19-11-1; *In re* Estate of Dimond, 2008 SD 131, ¶9, 759 NW2d 534, 538 (discussing SDCL 19-11-1). This rule requires that "substantial, credible evidence be introduced to rebut the presumption." SDCL 19-11-1. This Court has explained the rule's application:

> Reading this statute as a whole, therefore, we deduce that the substantial, credible evidence requirement means that a presumption may be rebutted or met with such evidence as a trier of fact would find sufficient to base a decision on the issue, if no contrary evidence was submitted. But mere assertions, implausible contentions, and frivolous avowals will not avail to defeat a presumption. What may suffice as substantial, credible evidence will, of course, vary depending on the nature of the presumption. A presumption implementing vital public policy, like the presumption of legitimacy, for instance, would require weighty evidence to surmount it. Conversely, a presumption established primarily as a procedural device may require some lesser quantum of substantial, credible evidence for rebuttal.

*Dimond*, 2008 SD 131, ¶9, 759 NW2d at 538 (citations omitted). In the context of rebutting special assessments, this Court has required "weighty evidence" in that it should be "strong, direct, clear and positive." *Hawley*, 276 NW2d at 705 (citing Meyer v. City of Oakland Park, Fla., 219 So2d 417, 420 (Fla 1969)). Here, the Petitioners also have the ultimate burden of persuasion to prove by clear and convincing evidence that the property did not receive a benefit over and above or differing from the benefit received by the general public.[2] *See Dimond*, 2008 SD

---

2.    The "strong, direct, clear and positive" language used in *Ruel* and *Hawley* has always referred to the type of evidence needed to overcome the presumption
(continued . . .)

131, ¶9, 759 NW2d at 538; *In re* Tax Assessment of Foster Found.'s Woodlands Retirement Cmty., 672 SE2d 150, 163 n20 (WVa 2008).

*Whether the Circuit Court Gave Proper Deference to the City's Decision*

[¶17.] The City claims that the circuit court erred by not giving proper deference to the City's decision to impose special assessments and, in effect, substituted the court's judgment for the City's. The City argues that the decision to assess the adjacent properties was a legislative decision and that a court should not interfere with its actions unless the action is "palpably arbitrary, unreasonable or beyond [its] authority." *See* Sanderson v. City of Mobridge, 317 NW2d 828, 829 (SD 1982). But if a city's action violates constitutional principles, the action is by its very nature arbitrary, unreasonable, and beyond its authority. The constitutionality of a city's act in specially assessing property requires the assessment "be measured or limited by the special benefits accruing to [the property]." *Norwood*, 172 US at 294, 19 SCt at 196. Any assessment in excess of the special benefit received is constitutionally impermissible and, consequently, arbitrary, unreasonable and beyond its authority. *See id.* at 288, 19 SCt at 194

_____

(. . . continued)

that the special assessment is correct. Our prior cases have not discussed the level of proof related to the burden of persuasion. But other jurisdictions using similar language for the presumption use the clear and convincing standard for the ultimate burden of persuasion. *See* Ashbar Enters. v. City of Akron, 2001 WL 1142354 *2 (Ohio Ct App 2001) (citing Smith v. City of Avon, 2000 WL 1729484 (Ohio Ct App 2000) (citing Burton v. City of Middletown, 446 NE2d 793, 799 (Ohio Ct App 1982); Schiff v. City of Columbus, 223 NE2d 54, 59 (Ohio 1967)). *See also* 2nd Roc-Jersey Assocs. v. Town of Morristown, 731 A2d 1, 9 (NJ 1999). We adopt a similar standard for the ultimate burden of persuasion in special assessment cases in South Dakota.

(referring to principle generally recognized by courts). A careful review of the circuit court's analysis indicates that it was aware of this principle. The circuit court noted in its decision that the City's "findings as to benefits are correct and the presumption may be overcome only by strong, direct, clear and positive proof."

*Evidence at Trial*

[¶18.] The City's remaining issues are directed at the circuit court's manner of considering the evidence. The trial commenced with the Petitioners' evidence, consisting of testimony from two property owners and three real estate experts. Property owner Hubbard testified that his residential lot was part of a three block portion of North Grand Avenue designated as the Pierre Hill Historic District. Hubbard testified that the curb in front of his home was an older style curb with square corners and was in good condition before replacement. In Hubbard's opinion, the replacement curb and gutter did not enhance the value or aesthetics of his property and may, in times of heavy rain, give less protection to his lot than the older, higher curb. Likewise, he found no benefit in the portion of his driveway that needed to be replaced. Property owner Orsbon also testified that his property received no benefit from the replaced curb and gutter. Orsbon had a master's degree in city planning, was a member of the American Institute of Certified Planners, and had over twenty years of experience working for local and state governments in his field of expertise. Based on this experience, Orsbon testified that the primary function of curb and gutter was to keep water out of the base of the street to preserve the strength of the pavement and underlying structure. His opinion was that installing curb and gutter along property that did not have curb

and gutter would generally increase the value of the property. He also testified that replacement curb and gutter adds no value to the property and that his property did not benefit from the curb and gutter replacement. Orsbon claimed his original curb and gutter was in good condition with an estimated life span of another 30 years. But he acknowledged that property may receive a benefit from replacing curb and gutter when the curb and gutter is nonfunctioning and deteriorating.

[¶19.] The Petitioners also presented testimony from the county assessor, a real estate broker, and a real estate appraiser. The assessor testified that replacing existing curb and gutter does not increase the assessed value of residential property for tax purposes. The real estate broker testified that replacing curb and gutter does not increase the market value of the property. The certified property appraiser testified that it is "almost impossible" to determine an amount that a property might benefit in value by replacing its curb and gutter. In his opinion, the cost of replacing curb and gutter would not reflect the benefits received.

*Rebuttable Presumption*

[¶20.] The initial question before the circuit court was whether the Petitioners' evidence was sufficient to overcome the presumption in favor of the City's action. The circuit court had to determine if the Petitioners' evidence was "sufficient to base a decision on the issue, if no contrary evidence was submitted." *Dimond*, 2008 SD 131, ¶9, 759 NW2d at 538. The circuit court specifically found that the Petitioners had overcome the presumption of the City's special assessment by presenting sufficient evidence that the property received no special benefit by "strong, direct, clear and positive proof." The City does not challenge these findings

as clearly erroneous, and the record supports the circuit court's findings. The evidence consisted of more than "mere assertions, implausible contentions, and frivolous avowals." *Id.* The circuit court determined the evidence credible. Thus, the circuit court did not err in finding that the Petitioners overcame the presumption.

*Consideration of the Evidence*

[¶21.] Once the presumption was rebutted, the Petitioners still had the ultimate burden of persuasion to prove by clear and convincing evidence that the property was not specially benefited. The City does not specifically challenge the circuit court's findings as clearly erroneous. But the City disagrees with how the circuit court considered and weighed the evidence. Specifically, the City takes issue with the circuit court's failure to give the City's testimony and evidence greater weight. The City also claims the circuit court erred when it failed to give separate consideration to the special benefit provided to each property, particularly the properties affected on Tyler and Dakota Avenues. The City claims that the circuit court erred by focusing on the testimony of the two property owners, Hubbard and Orsbon, and disregarding the evidence of "a myriad of problems" demonstrated by the City's exhibits showing the pre-replacement conditions of other properties. The City claims that "[t]he before and after photographs of the affected properties are evidence in and of themselves of the significant benefits [the Petitioners] received by virtue of the improvements."

[¶22.] The City called John Childs, the City Engineer, who testified that the primary reason for the City's project was to replace the water mains. Childs noted

-14-

that the streets and curb and gutter were also replaced to meet current standards as part of the replacement project. He testified that the curb and gutter was a nonstandard configuration and had reached the end of its useful life in many areas. He indicated that the condition of the road pan could not be determined because it was covered with asphalt. The City estimated the condition of the pan based on the age and condition of the curb. The decision to replace all the curb and gutter on Grand Avenue, rather than just the defective sections as it had done on Tyler and Dakota Avenues, was to ensure an even and continuous flow line. Childs testified that the benefits of replacing the curb, gutter, and driveways was "to provide[] proper drainage away from the properties and the streets to where there is not an opportunity for water to penetrate the subsurface and damage properties." Childs also admitted that the pictures taken by the City did not show the entire curb sections to be replaced. Instead, Childs testified that the photographs "primarily show[ed] the defects."

[¶23.] The circuit court noted that "Child's key admission was that a uniform curb style throughout an area provides no more benefit to property owners than does a collective variety of curb styles." The circuit court also noted that Childs "had difficulty specifying any area in any of the exhibits where the curb and gutter structure prior to replacement had damages or could damage the homeowner's property." This finding by the circuit court referred to the before and after photographs of the replaced curb and gutter segments.

[¶24.] The City's mayor, Dennis Eisnach, also testified. He explained the difference in the three projects and why the piecemeal curb and gutter replacement

was used on Tyler and Dakota Avenues and why total replacement was used on Grand Avenue. The Grand Avenue total replacement was done to direct the flow of storm water, create contour uniformity, and update aging curb. The mayor indicated that the decision to specially assess for curb, gutter, and driveway costs was due to a belief that the property owners individually benefited more than the City in general. The mayor acknowledged that the benefit may not increase the value of property, but there was "an element of protecting the property, the private property as well as the City property." The mayor candidly admitted that the decision to impose special assessments for curb and gutter helps defray the City's cost for the total project and that "it's always been done that way."

[¶25.] The circuit court gave more weight to the Petitioners' testimony and evidence. The circuit court noted that it was undisputed that replacing the curb and gutter did not enhance the value of the abutting property. Recognizing that special benefits may accrue in other ways, the circuit court considered the City's claim that the new curb and gutter protected the property by providing proper drainage. The circuit court determined that the benefit of replacement curb and gutter was the same for the property owners as it was for the community at large and that many of the benefits only benefited the City. The circuit court analyzed the evidence as follows:

> The City and the property owners do enjoy the joint benefit of having old concrete curb and gutter replaced by new concrete, increasing its useful life and the lifespan of the streets. However, it is difficult to ascertain which properties benefited from this improvement since the old curb and gutter was installed anywhere from the mid-1930's up until 2006. Another benefit cited by the City is that the profile of the curb and gutter would be uniform throughout the City of Pierre. Since the

> profile of the curb has nothing to do with its functionality, this is a public benefit only. In addition, Petitioners in the historic district view the new profiles as detrimental to their neighborhood as it fails to match the architecture of the historic homes, and the lower profiles fail to protect their property as well as the older, higher curbs. The City has indicated that replacing the curb and gutter at the same time they replaced the streets was the most efficient and economical course to follow which is beneficial to the City and the taxpayers. Finally, another benefit cited by the City is that the property owners benefited by the "individualized" approach [taken] in addressing the needs of each property, which included utilizing driveway approaches when required. However, conforming the project to the adjoining property also benefits the City by insuring the functionality of the curb and gutter which in turn benefits the streets by protecting their integrity and increasing their lifespan.

The circuit court concluded, based on the testimony and evidence, "that replacing the curb and gutter and driveway approaches provided no actual, physical, material and quantifiable special benefits to the adjacent properties." It further determined that the special assessments "were levied using 'speculative and conjectural' methods, creating an alleged benefit in excess of the increase in specific monetary or extrinsic value conferred, for projects that provided significant benefits to the City and the community as a whole." The parties did not request the circuit court to examine individual property assessments in relation to accrued benefits. The focus was on the assessment as a whole. The circuit court found that, based on the evidence, the Petitioners had shown that *replacement* curb and gutter did not provide a measurable benefit to abutting property.[3]

---

3. The City did not raise the issue whether SDCL 9-43-74 limited the Petitioners' remedy to reducing or eliminating their individual assessments. SDCL 9-43-74 provides:

(continued . . .)

[¶26.]    On review, this Court defers to the circuit court, as fact finder, to determine the credibility of witnesses and the weight to be given to their testimony. On appeal, "[t]he question is not whether this Court would have made the same findings the circuit court did, but whether on the entire evidence, 'we are left with a definite and firm conviction that a mistake has been committed.'" Wangsness v. Builders Cashway, Inc., 2010 SD 14, ¶9, 779 NW2d 136, 139 (quoting New Era Mining Co. v. Dakota Placers, Inc., 1999 SD 153, ¶7, 603 NW2d 202, 204). This Court resolves conflicts in evidence in favor of the circuit court's determinations. See Baun v. Estate of Kramlich, 2003 SD 89, ¶21, 667 NW2d 672, 677 (citing In re Estate of Till, 458 NW2d 521, 523 (SD 1990)). This Court has said: "[t]he credibility of the witnesses, the import to be accorded their testimony, and the

_____

(. . . continued)

Whenever any action or proceeding shall be commenced and maintained in any court to restrain the collection of any assessment levied for any municipal local improvement, to recover any such assessment previously paid, to recover the possession or title of any real property sold for such an assessment, to invalidate or cancel any deed or grant thereof for such an assessment, or to restrain or delay the payment of any such assessment, the true and just amount of such assessment due upon such property must be ascertained and judgment must be rendered therefor, making the same a lien upon the property and authorizing execution or process to issue for the collection thereof by a sale of the property. If in the opinion of the court the assessment has been rendered void or voidable by any act or omission, it may order that a reassessment be made under the provisions of §§ 9-43-20 and 9-43-21 and require the payment of the same as a condition for granting such relief, or declare by its judgment that the same shall be a lien upon the property, and authorize the issuing of execution or proper process for its collection by a sale of the property, to the end that the whole matter may be adjudicated in the one action or proceeding and the proper proportion or ratio of the assessment be paid by the property owner. The cost of such an action or proceeding shall be taxed as the court may direct.

weight of the evidence must be determined by the trial court, and we give due regard to the trial court's opportunity to observe the witnesses and examine the evidence." *Id.*

[¶27.]    The City claims the circuit court incorrectly weighed the evidence and should have given more weight to the City's testimony and evidence. It is not our role on appeal to retry this case or substitute our judgment as to credibility and weight of the evidence. This Court defers to the circuit court because of its ability to observe the witnesses. The circuit court was persuaded by the credibility and weight of the Petitioners' evidence. The circuit court was unable to conclude from the evidence that the replaced curb, gutter, and driveways provided "actual, physical, material and quantifiable special benefits" to the property assessed. The most that could be determined from the City's evidence was that replacing the curb and gutter extended its useful life by varying estimates and in some cases may have improved the flow of water away from the property. The City's quantification of the benefits, however, was ambiguous and conclusory in that the City assumed the benefits equaled the cost. The circuit court determined that the Petitioners' evidence demonstrated that the replaced curb, gutter, and driveway did not provide a benefit above and beyond or differing from the benefit enjoyed by the rest of the community. Because the circuit court's findings of fact are based on the evidence and not clearly erroneous, we decline to substitute our judgment as to the weight and credibility of the evidence, as urged by the City. The circuit court applied the correct law regarding the question whether the special assessments were constitutional. The circuit court's findings of fact support its conclusions of law that

the special assessments were unconstitutional. Thus, the City has not shown that the circuit court erred.

[¶28.]	We note that this opinion should not be read broadly to mean that as a matter of law special assessments cannot be used for replacement curb and gutter. Whether special assessments are constitutional depends heavily on the nature and character of the project and the facts of the individual case. Additionally, we decline to address whether enjoining the entire assessment role was the appropriate remedy. That issue was neither raised to the circuit court nor preserved for appeal.[4]

[¶29.]	The circuit court is affirmed.

[¶30.]	GILBERTSON, Chief Justice, and KONENKAMP and SEVERSON, Justices, and GIENAPP, Circuit Court Judge, concur.

[¶31.]	GIENAPP, Circuit Court Judge, sitting for ZINTER, Justice, disqualified.

---

4.	The appropriateness of injunctive relief was only raised by the Municipal League's amicus brief wherein it claimed that the property owner's remedy was through SDCL 9-43-74. We do not consider issues neither presented to the trial court nor properly raised on appeal by the parties. *See* State v. Wright, 2009 SD 51, ¶68, 768 NW2d 512, 534.