#29676, #29687-aff in pt & rev in pt-JMK
**2023 S.D. 10**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ROBERT LAMB and
ANNETTE LAMB,                                        Plaintiffs and Appellants,


      v.


PAUL WINKLER, as Personal
Representative of the Estate of
BEVERLY ANN WINKLER, a/k/a
BEVERLY WINKLER, Deceased,                   Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
BUTTE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MICHAEL W. DAY
Judge

\* \* \* \*

THOMAS E. BRADY of
Lynn, Jackson, Shultz &
   Lebrun, P.C.
Spearfish, South Dakota                            Attorneys for plaintiffs and
                               appellants.


COURTNEY R. CLAYBORNE of
Clayborne, Loos & Sabers, LLP
Rapid City, South Dakota                           Attorneys for defendant and
                               appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
FEBRUARY 14, 2022
OPINION FILED **03/01/23**

#29676, #29687

KERN, Justice

[¶1.]        Robert and Annette Lamb (Lambs) sued Paul Winkler (Winkler), the personal representative of Beverly Winkler's estate, in tort for damages arising from a motor vehicle accident in which Beverly sustained fatal injuries.  The circuit court granted partial summary judgment to the Lambs, holding that Beverly was negligent per se.  The parties proceeded to a bench trial on the issue of damages, and the circuit court awarded damages to the Lambs.  The Lambs appeal from the circuit court's amended judgment, which assessed the Lambs' total damages, prejudgment interest, and costs at $36,498.80.  The Lambs contend that the circuit court erred as a matter of law by finding that the Lambs' tractor was damaged in the accident and then not awarding any compensation for the tractor's loss in value. We affirm in part and reverse in part.

**Facts and Procedural History**

[¶2.]        At 6:20 p.m. on October 26, 2016, a vehicle operated by Beverly Winkler rear-ended a tractor operated by Robert Lamb that was towing farming equipment on U.S. Highway 212 near Belle Fourche in Butte County, South Dakota.  At the time of the collision, Robert was driving a 1982 895 Versatile Tractor and towing a 726 John Deere Mulch Finisher, a type of cultivating and tilling machine.  Robert was traveling approximately 20 miles per hour, while Beverly was traveling approximately 65 miles per hour.  Prior to the collision, Robert observed Beverly driving behind him at a distance.  His attention then turned to a pickup passing an oncoming car in front of him, causing Robert to consider driving into the ditch in order to avoid the side-by-side oncoming vehicles.

-1-

However, the pickup finished passing the car and returned to its proper lane before Robert needed to take any action. Shortly after the oncoming car and pickup passed, Beverly collided with the rear end of the finisher. There was no evidence of braking at the scene, and a blood test showed that Beverly's blood alcohol content was 0.16 at the time of the collision. Beverly sustained severe injuries upon impact and was life flighted to Rapid City Regional Hospital. Unfortunately, Beverly did not survive.

[¶3.]     Upon impact, Robert was knocked back in his seat and temporarily rendered unconscious from hitting his head on the back window of the tractor. After traveling approximately 250 feet, Robert regained consciousness. The engine of the tractor was roaring from RPMs revving, and the tractor had left the road and was traveling through the ditch. There was no evidence of a skid at the point of collision, supporting the inference that the force from the accident went through the rear end of the tractor.

[¶4.]     The impact sheared the one and three-eighths inch steel hitch pin off the tractor, disconnecting the finisher from the tractor. Upon impact, Beverly's car went under the finisher, causing shearing on several of the finisher's spring-tooth harrows, pushing its shovels into one of its tires, and bending its beams.

[¶5.]     Following the accident, Robert was taken to the emergency room at Regional Hospital in Sturgis, reporting mid-back soreness. Dr. Hermann provided an assessment of "MVA (motor vehicle accident) with lower thoracic discomfort without evidence of severe injury." The parties stipulated that Robert incurred $3,270 in medical expenses stemming from the accident. Robert complained of

ongoing numbness in his arm, but no medical testimony was provided to substantiate a claim that the condition related to the accident.

[¶6.] On October 27 or 28, 2016, the Lambs used the tractor to tow the damaged finisher approximately one quarter mile from the accident site to their farmyard. The tractor and finisher remained unmoved from the Lambs' farmyard throughout the remainder of the case. The Lambs, however, needed functional equipment by March 2017 to timely plant their crops. They inquired about a short-term rental for a tractor but ruled out that option after learning the cost would range from $10,000–$15,000. Concerned with the timeline for repairs of their damaged tractor, with the availability of necessary parts, and that costs might exceed the value of the tractor, the Lambs chose to forego having it inspected and repaired, instead deciding to buy a replacement tractor and finisher. The Lambs conducted an internet search and traveled through South Dakota, Nebraska, and Iowa to inspect available equipment.

[¶7.] On February 23, 2017, the Lambs purchased a 936 Versatile Tractor from an equipment dealer in Onida, South Dakota, at a total cost of $32,395. The 936 Versatile was a newer model purchased to replace the Versatile Tractor that was in the accident. The Lambs had originally purchased the 1982 895 "fixer upper" Versatile in April 2011 for $18,500. At trial, the Lambs testified that they had invested $20,536.11 into transporting, fixing, improving, and maintaining the tractor between 2011 and 2016, as reflected on their spreadsheet admitted as Exhibit 20 at trial. The circuit court found that, when properly maintained, a tractor can appreciate in value over time. In Robert's opinion, the tractor was

worth $39,000 before it was damaged in the accident.[1]  With the exception of the age of the two tractors, they were essentially identical, with roughly the same operating hours, horsepower, engine, transmission, and tires.  Robert asserted that the amount of damages owed to the Lambs resulting from damage to their tractor was $36,500, or the estimated value of $39,000 prior to the accident less the salvage value of $2,500 claimed by the Lambs.

[¶8.]        On March 1, 2017, the Lambs purchased a 726 John Deere Field Finisher to replace the damaged finisher.  The total cost of the 726 Finisher was $22,990.  Additionally, the Lambs paid $1,250 for the delivery of the finisher and another $1,250 for repairs, service, and maintenance prior to placing it into use.  However, the circuit court discounted the Lambs' asserted improvements to the finisher, which were detailed in a handwritten list setting forth the costs for repairs, service, and maintenance—this list was dated on or around December 3, 2019, well over two years after the Lambs had purchased the replacement finisher.  The Lambs purchased the original finisher that was damaged in the accident for $17,888 in March 2013.  They asserted the salvage value of the damaged finisher was $2,500.

[¶9.]        The Lambs filed a complaint against Winkler as the personal representative of Beverly's estate on June 13, 2017, alleging that Beverly negligently caused the Lambs' damages in the collision.  On May 15, 2019, the circuit court entered partial summary judgment in favor of the Lambs, holding that

---

1.    Robert appears to have arrived at this sum by adding the purchase price of the tractor to the asserted investments reflected in Exhibit 20. ($18,500 + $20,536.11 = $39,036.11).

Beverly was negligent per se by driving with a blood alcohol content of 0.16, which is twice the legal limit, and that her negligence was the legal cause of the October 26, 2016 collision.

[¶10.]     The circuit court held a bench trial on the Lambs' claims for damages on November 23, 2020, both parties having waived their right to a jury trial. No evidence or testimony was provided to support a theory of contributory negligence, and Winkler waived affirmative defenses. Robert Lamb, Annette Lamb, and Scott Merrow, the owner of an equipment dealership with over a decade of experience in diesel engine repair work, provided testimony in support of the Lambs' claims for damages.

[¶11.]     Robert farmed a "160-acre [parcel] of land east of Nisland" and owned, operated, and maintained various types of farm equipment as part of his operation. He repaired his own equipment and was familiar with the mechanics of transmissions, differentials, and diesel engines. He "has been involved in farming throughout his life" and has extensive "experience with welding and metal fabrication through" previous employment. Robert testified that, in his opinion, the tractor's market value at the time of the accident was $39,000, but the costs of repair to make the tractor operational after the accident were likely to be as much as $51,000.

[¶12.]     In Robert's opinion, "the cost to inspect the tractor and repair known damage was, at minimum, $31,700." Regarding known damage to the tractor, Robert testified that the damage to the center pivot or articulating joint was readily observable. He did not present any written cost estimates for this repair. Rather,

Robert testified that he priced the cost for this repair "when we were trying to assess whether we could fix the tractor or not[.]" "[I]f I remember right, it was $300 a [hole]" to bore the holes out. He further explained that he believed they had counted eighteen holes for a machinist to bore. In discussing additional claimed labor to perform this work, Robert testified that he believed it would take two and one-half days to take the articulating joint apart. "And speaking to the shops, they say you can pound on them pins–if they've been smashed in there like that, you can pound on them for two to three days to get them out." Robert further testified that the cost per hour for labor was $90 to $100 "[a]nd it was open ended." Robert also noted that the hitch pin had been sheared off in the collision, but he did not testify regarding the cost of replacing the hitch pin. The remaining portion of the $31,700 was Robert's expected cost to disassemble, inspect, and reassemble parts of the transmission, differentials, and planetaries to determine if they were in fact damaged and to replace the batteries.

[¶13.]     The Lambs also provided testimony from Merrow, an expert in diesel engine repair and "the owner of Bickle's Truck and Diesel in Belle Fourche." Merrow has more than a decade of experience performing diesel engine repair and overhauling work. Merrow testified that the range of damages to the tractor engine could be anywhere from $2,800 to his worst-case scenario of $23,034.83. However, in Merrow's opinion, a full inspection would be required to ascertain the extent of the damage—an inspection he was not asked to perform. Merrow noted that the specific type of engine in the tractor, an 855 Cummins, is susceptible to serious, even catastrophic internal damage when overrun, and this damage can potentially

occur within just a few seconds. Based on Robert's recounting of the accident, the tractor's engine was overrun for several seconds immediately following the accident. On cross-examination, however, Merrow conceded that the fact that the Versatile Tractor was used to tow the finisher back to the farmyard from the accident site was indicative of less rather than more damage to the engine. Merrow additionally testified that he had noticed damage to the pivot in his cursory inspection of the tractor engine.

[¶14.]     At the conclusion of the trial, the court took the matter under advisement, directing the parties to file post-trial submissions. In their proposed findings of fact and conclusions of law, the Lambs requested damages of $36,500 for the tractor, $20,500 for the finisher, medical expenses of $3,270 plus prejudgment interest, and $75,000 in damages for Robert's pain and suffering.

[¶15.]     The court entered its findings of fact and conclusions of law on March 22, 2021, followed by a judgment on May 7, 2021, awarding the Lambs a total of $25,270. This sum consisted of "$20,500 for damages associated with the finisher," "$3,720 for medical expenses," and "$1,500 for general personal injury damages."[2] The court held that "the Lambs have failed to meet their burden of proof with respect to the diminution of value and cost of repairs for the 895 Versatile tractor." The court stated, "[w]ithout concrete evidence obtained through an inspection, [it was] unable to speculate as to the value of the tractor following the collision." Although the court recognized that Robert had testified to the existence of some

---

2.     The court ordered prejudgment interest on the damages portion of the judgment.

damage to the tractor and the cost of inspecting, repairing, or replacing certain parts of the tractor, the court declined to make any findings of fact as to those costs of repair or replacement, implicitly rejecting Robert's opinion, including his testimony regarding the cost of repairing the pivot.[3] The court found that because "Robert did not support his estimate by obtaining an inspection" it could not speculate as to the value of the tractor following the collision because no evidence beyond Robert's opinion had been presented. As such, the court awarded no damages to the Lambs for the tractor.

[¶16.] The Lambs filed a motion for reconsideration on May 10, 2021, arguing that because the court found that the tractor had some damage but was not totaled, it erred by not awarding the known costs of repair, which they argued equated to at least $24,300. Additionally, the Lambs requested a recalculation of the prejudgment interest to which they were entitled and claimed that as the prevailing party, they were entitled to costs. Following a hearing on May 25, 2021, the court entered an amended judgment, awarding the Lambs a total of $36,498.80, consisting of $29,783.97 for damages associated with the finisher including prejudgment interest, $4,750.91 for medical expenses including prejudgment interest, $1,500 for general personal injury damages, and $463.92 for costs. The court, however, declined to reconsider its decision to award nothing for damage to the tractor.

---

3. In its findings of fact, the circuit court noted that Robert had asserted certain costs, but it declined to make any findings as to what those costs actually were.

[¶17.] The Lambs appeal, asking whether the circuit court erred by finding that their tractor was damaged but awarding nothing in damages.[4]

## Standard of Review

[¶18.] Pursuant to SDCL 15-6-52(a), factual findings are examined under the clearly erroneous standard. "In applying the clearly erroneous standard, . . . [t]he question is not whether this [C]ourt would have made the same findings that the trial court did, but whether on the entire evidence we are left with a definite and firm conviction that a mistake has been committed." *Fin-Ag, Inc. v. Feldman Bros.*, 2007 S.D. 105, ¶ 19, 740 N.W.2d 857, 862–63 (alteration in original) (quoting *Am. Bank & Tr. v. Shaull*, 2004 S.D. 40, ¶ 11, 678 N.W.2d 779, 783). Further, "[o]n review, this Court defers to the circuit court, as fact finder, to determine the credibility of witnesses and the weight to be given to their testimony." *Hubbard v. City of Pierre*, 2010 S.D. 55, ¶ 26, 784 N.W.2d 499, 511. In keeping with this stance, "[t]he credibility of the witnesses, the import to be accorded their testimony, and the weight of the evidence must be determined by the trial court, and [this Court gives] due regard to the trial court's opportunity to observe the witnesses and examine the evidence." *Id.* (first alteration in original) (quoting *Baun v. Estate of Kramlich*, 2003 S.D. 89, ¶ 21, 667 N.W.2d 672, 677). Conversely, "[c]onclusions of law are reviewed under a de novo standard, 'with no deference to the trial court's conclusions of law.'" *Koopman v. City of Edgemont by Dribble*, 2020 S.D. 37, ¶ 13,

---

4. Winkler filed a notice of review raising the issue whether the circuit court erred in allowing the undisclosed testimony of the Lambs' "experts." The issue was subsequently withdrawn by Winkler.

945 N.W.2d 923, 926 (quoting *Estate of Henderson v. Estate of Henderson*, 2012 S.D. 80, ¶ 9, 823 N.W.2d 363, 366).

## Analysis and Decision

[¶19.]     As we noted in *Wright v. Temple*, "[f]or the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." 2021 S.D. 15, ¶ 42, 956 N.W.2d 436, 449–50 (quoting SDCL 21-3-1). In cases like the Lambs', where the negligence of one individual causes damage to the motor vehicle of another, this Court has recognized as proper two methods of measuring damages—reasonable cost of repair and the diminution in the vehicle's fair market value.[5] Under the reasonable cost of repair rule, "the proper measure of damages is the cost of repairs and the value of its use during the time it is being repaired." *Joseph v. Kerkvliet*, 2002 S.D. 39, ¶ 10, 642 N.W.2d 533, 536 (quoting *Thormahlen v. Foos*, 163 N.W.2d 350, 353 (S.D. 1968)), *superseded on other grounds by rule*, SDCL 19-19-103, *as recognized in Wright*, 2021 S.D. 15, ¶ 47, 956 N.W.2d at 452. Alternatively, under the diminution in value rule, if the cost of repairs is greater than the diminution in value, a property owner may recover the difference in the property's fair market value immediately before the accident and

---

5.     In cases "[w]here the law furnishes no legal rule for measuring damages, the amount rests largely within the discretion of the [fact finder]. However, the discretion of the [fact finder] is not an arbitrary, unbridled, or unlimited one[]" and shall adhere to our rules regarding fact of damage and proving amount of damages by reasonable certainty. 25 C.J.S. Damages § 107, Westlaw (database updated Feb. 2023); *see also Big Rock Mountain Corp. v. Stearns-Roger Corp.*, 388 F.2d 165, 170 (8th Cir. 1968) (applying South Dakota law). In addition, an award of damages must adhere to generally applicable principles articulated in SDCL chapter 21-1.

immediately after the accident. *Reed v. Consolidated Feldspar Corp.*, 71 S.D. 189, 196, 23 N.W.2d 154, 157 (1946); *see also Big Rock Mountain Corp. v. Stearns-Roger Corp.*, 388 F.2d 165, 168 (8th Cir. 1968) (applying South Dakota law). But, "a property owner is entitled to full market value only if the property is totally destroyed in the accident." *Joseph*, 2002 S.D. 39, ¶ 10, 642 N.W.2d at 536; 22 Am. Jur. 2d Damages § 293 Westlaw (database updated Feb. 2023).

[¶20.]     The Lambs submit that they are entitled to $39,000 minus the tractor's salvage value of $2,500 for an award of damages totaling $36,500. They base this calculation on Robert's estimate that the cost to inspect and repair the tractor would have been "more than $50,000[,]" which exceeds Robert's estimate for the tractor's pre-collision fair market value. The Lambs contend that this calculation is consistent with the measure of damages identified in *Wright. See Wright*, 2021 S.D. 15, ¶ 43, 956 N.W.2d at 450 (observing that damages for injury can be determined by the lesser of two calculations).[6] Alternatively, and as they asserted in their motion for reconsideration, the Lambs argue that they were "at least entitled to

---

6.     The Court in *Wright* quoted the circuit court's jury instructions on damages, including that reasonable compensation for damage to personal property can be determined by:

> Reasonable compensation for damage to [plaintiff's] property, determined by the lesser of two measures: (1) The difference between the fair market value of the property immediately before the occurrence and immediately after the occurrence; or (2) The reasonable expense of making any necessary repairs to the damaged property, plus the difference, if any, in the fair market value of the property immediately before the occurrence and its fair market value immediately after repair.

2021 S.D. 15, ¶ 43, 956 N.W.2d at 450 (quoting South Dakota Civil Pattern Jury Instruction 50-20-10).

judgment for damages" that they believe are reflected in the circuit court's findings, namely "the costs to be incurred to inspect for damage and to repair some damage as known" to the tractor of $24,300 and to the pivot in the sum of $7,400 for a total of $31,700.[7]

[¶21.]    Proving damages is "an essential element for recovery." *McKie v. Huntley*, 2000 S.D. 160, ¶ 20, 620 N.W.2d 599, 604. The existence of damages must be shown by a preponderance of the evidence. *Rumpza v. Zubke*, 2017 S.D. 49, ¶ 19, 900 N.W.2d 601, 607–08 (citing *McKie*, 2000 S.D. 160, ¶ 20, 620 N.W.2d at 604) (stating the burden to prove compensatory damages and applying the standard to a contractual dispute). When determining a damages amount, "[f]acts must exist and be shown by the evidence which afford a basis for measuring the loss of the plaintiff with reasonable certainty." *Weekley v. Prostrollo*, 2010 S.D. 13, ¶ 26, 778 N.W.2d 823, 830 (alteration in original) (quoting *Drier v. Perfection, Inc.*, 259 N.W.2d 496, 506 (S.D. 1977)). This Court has defined a reasonable certainty as "'proof of a rational basis for measuring loss,' without requiring the trier of fact to speculate." *ISG, Corp. v. PLE, Inc.*, 2018 S.D. 64, ¶ 29, 917 N.W.2d 23, 33 (quoting *Kreisers Inc. v. First Dakota Title Ltd. P'ship*, 2014 S.D. 56, ¶ 40, 852 N.W.2d 413, 424).

---

7.    The court entered the following findings summarizing Robert's and Merrow's testimony estimating damages and the cost of repairing the tractor: Finding of Fact (FF) 20-$5,400 to inspect and re-install transmission; FF 21-$2,000 to remove and re-install tires; FF 22-$6,400 to inspect, repair, and replace planetaries; FF 23-$3,200 to inspect and repair differentials; FF 24-$700 to replace batteries; FF 27-$6,600 (rounded) Merrow's estimated cost to open and inspect engine including rod and main bearings.

*Robert Lamb's Testimony*

[¶22.]     As a preliminary matter, we address the Lambs' argument that the evidence establishing the cost of repairs and fair market value of the tractor went uncontested at trial.  Here, the source of the Lambs' valuation for the tractor pre- and post-collision is solely Robert's opinion, and the Lambs' contention that the cost of repairs was greater than the fair market value of the tractor was also largely based on Robert's testimony.

[¶23.]     It is well settled that a property owner is qualified to testify regarding the value of his or her property.  *Wright*, 2021 S.D. 15, ¶ 39, 956 N.W.2d at 449 (citing *Behrens v. Wedmore*, 2005 S.D. 79, ¶ 65, 698 N.W.2d 555, 580).  Indeed, in its conclusions of law, the circuit court found Robert qualified to render his opinion as to value, to the extent that he established foundation for his opinion.  However, a court, sitting as the fact finder in a bench trial, is not required to *adopt* a property owner's valuation wholesale.  Although the property owner may inform the fact finder as to his opinion of value, the fact finder, not the witness, makes the ultimate determination.  Specifically, "[t]he credibility of the witnesses, the import to be accorded their testimony, and the weight of the evidence must be determined by the trial court, and we give due regard to the trial court's opportunity to observe the witnesses and examine the evidence." *Hubbard*, 2010 S.D. 55, ¶ 26, 784 N.W.2d at 511 (alteration in original) (quoting *Baun*, 2003 S.D. 89, ¶ 21, 667 N.W.2d at 677); *cf. State v. Buchholtz*, 2013 S.D. 96, ¶ 28, 841 N.W.2d 449, 459 (explaining, in the context of expert witness testimony, that "[a]n expert's role is to 'assist the trier of fact to understand the evidence or to determine a fact in issue[]' . . . not to tell the

trier of fact what to decide, shifting responsibility from the decision maker [here, the circuit court] to the expert.") (internal citation omitted).

[¶24.] In support of their contention that Robert's valuation is controlling because it was uncontroverted, the Lambs cite *Roden v. General Cas. Co. of Wisconsin*, which states, "facts proven by uncontradicted testimony not inherently improbable should be taken as conclusively established." 2003 S.D. 130, ¶ 16, 671 N.W.2d 622, 626 (quoting *Nat'l Bank of Com. of N.Y. v. Bottolfson*, 55 S.D. 196, 225 N.W. 385, 386 (1929)). However, Robert's testimony regarding the cost of repairing the tractor, the fair market value of the tractor pre- and post-collision, and whether the costs of repair exceeded the fair market value was controverted—Robert was cross-examined extensively on the issue. *See Wright*, 2021 S.D. 15, ¶ 41, 956 N.W.2d at 449.[8] Furthermore, the Lambs, as plaintiffs, bore the burden of proving their damages. Winkler had no obligation to present his own witness(es) to dispute Robert's opinions.

[¶25.] Winkler's cross-examination of Robert and the testimony Robert gave on cross-examination significantly undermine the Lambs' assertion on appeal that Robert's opinions and valuations were "uncontradicted." Specifically, Robert

---

8. In *Wright*, this Court evaluated the defendant's contentions regarding the plaintiff's valuations, even though the defendant presented no witnesses. *Id.* We stated, "[Defendant] did not offer independent testimony regarding the fair market value of the plane prior to or after the 2014 crash. Nevertheless, through cross-examination of [Plaintiff] and [Plaintiff's witness], [Defendant] established that no offers were made to purchase the plane at the $75,000 price. He then argued that [Plaintiff's] estimated value was too high." *Id.* Thus, *Wright* instructs that a defendant need not present his or her own witness to controvert a plaintiff witness's testimony. Cross-examination of the plaintiff's witness is sufficient to render the witness's testimony "controverted."

responded, "Correct" to Winkler's question on cross-examination that "the old tractor still sits in your yard. You don't know *right now* if it's operational, correct?" (Emphasis added.) Winkler asked Robert, "[a]nd so you don't know if that tractor is operational or *what it would get to make it run,* do you?" to which Robert responded, "No." (Emphasis added.) In addition, Robert gave the following explanation on cross-examination for his decision not to obtain an estimate for repairing the tractor:

> **Q:** And at that point, you made the determination that you didn't want to spend any money on that old tractor because at the time, the farm economy was in a slump and you felt that it was probably cheaper to replace it than repair it, is that correct?
>
> **A:** Well, we made some assumptions on checking out what was out there, yes. And it what [sic] was going to take to put it in and we wondered—I mean, in our mind, we wondered what the reliability was going to be putting that thing in the field.
> . . .
> **Q:** And you never did get a bid for repairing the tractor, is that correct?
>
> **A:** A written bid, no. But we verbally talked to the shop foreman at Advanced Equipment and we talked to Bickle's and we talked to a kid at Hersruds in Sturgis.

None of the individuals who Robert alleged provided a verbal bid testified at trial other than Merrow, who worked for Bickle's, and Robert did not relay the amount of their verbal bids. Therefore, Robert's valuation was not a "fact proven by uncontradicted testimony" that may be, under *Roden,* taken by a court as conclusively established.

### Market Value Damages

[¶26.] Here, the Lambs contend on appeal that they should receive $36,500 in damages for the tractor, which they considered destroyed based on Robert's

estimated cost of repairs exceeding Robert's estimated fair market value for the tractor. The bulk of the damages sought by the Lambs for the tractor related to their claim that the tractor's powertrain[9] was likely damaged by the force of the collision. The Lambs argue that "the obvious damage to the articulating joint [pivot] and hitch pin represented undisputed evidence of significant damage to the internal parts of the various drivetrain components." But the Lambs chose not to have an inspection done to determine the extent of the internal damage, if any, or costs of repairs to the entire tractor. Robert merely opined as to what the inspection costs would have been and what damage may have been uncovered had an inspection been conducted. The circuit court was not bound to accept his opinion in full as to either the cost of inspection or as to what damage might have been discovered.

[¶27.] The Lambs did provide testimony from Merrow, an expert in diesel engine repair, who testified that there was a high probability that something was seriously wrong with the tractor's engine after the crash. Merrow determined that the cost of inspecting and repairing the engine could range anywhere from $2,800 to $23,034.83. However, Merrow agreed that the only way to "find out [what's] happened and the consequences of it" was "by pulling the whole top end of the engine off and inspecting everything." Merrow did not conduct that detailed inspection. Notably, on cross-examination, Merrow agreed that when he conducted his initial cursory inspection, he was able to start the tractor, and he ran it for "just

9. The powertrain consists of the engine and the drivetrain, which includes the following components: transmission, differentials, final drive, axels, and each wheel's planetaries.

a brief moment." He further agreed that he could not "say one way or another" where the repairs to the tractor engine would fall along his cost spectrum of $2,800 to $23,034.83 and that making that determination was not something that he was hired to do.

[¶28.] Merrow additionally conceded on re-cross-examination that the tractor being capable of pulling the finisher from the accident scene back to the Lambs' property "certainly bode[d well] for it being less damage[d] than more damage[d]," a fact the circuit court found to be indicative of "substantially less damage" considering the testimony about the catastrophic damage that might otherwise occur when a Cummins engine is overrun.

[¶29.] Based upon this record, the resolution of the bulk of the Lambs' claim for damages to the tractor turns on whether there was proof the engine and transmission were in fact destroyed or in need of extensive repairs. The circuit court acknowledged in its findings that it was probable that the tractor suffered some damage to its powertrain, but without an inspection of the tractor, the circuit court determined that it could not "hypothesize as to its potential diminution in value." The court, therefore, concluded that the Lambs "failed to meet their burden of proof with respect the diminution in value and cost of repairs" for the tractor. "This [C]ourt is not free to disturb the lower court's findings unless it is satisfied that they are contrary to a clear preponderance of the evidence." *Fin-Ag, Inc.*, 2007 S.D. 105, ¶ 19, 740 N.W.2d at 863 (alteration in original) (quoting *Am. Bank & Tr.*, 2004 S.D. 40, ¶ 11, 678 N.W.2d at 783). Further, "[d]oubts about whether the evidence supports the court's findings of fact are to be resolved in favor of the

successful party's 'version of the evidence and of all inferences fairly deducible therefrom which are favorable to the court's action.'" *Id.* We are not convinced on this record that the court's underlying findings were clearly erroneous or that the court erred in concluding that the Lambs had failed to meet their burden of providing a basis to measure their damages with reasonable certainty such that the court would not be required to speculate.

### *Cost of Repair Damages*

[¶30.] The Lambs alternatively argue that the circuit court erred by not assessing monetary relief for the cost of repairs for specific damage to the tractor that was observable and had been "proven by a preponderance, as set forth in the findings of fact." Here, the court found by a preponderance of the evidence that the batteries, articulating joint, and hitch pin had been damaged in the collision. And unlike any damage to the powertrain, this damage was apparent without further inspection and went uncontested by Winkler at trial.

[¶31.] Specifically, the court found that "when the Lambs attempted to start their tractor the day after the collision, the batteries were dead . . . and [Robert] estimated the cost to replace them would be $700." The court also found that "Merrow observed damage to the pivot [articulating joint]. This damage is significant because it is necessary to machine and drill new bushings to repair the damage." Robert testified that the cost to perform this work would be $7,400. The court's findings also acknowledged damage to the hitch pin. "As a result of the impact, a one and three-eighths inch steel pin that connected the finisher to the tractor was sheared." Accordingly, based upon these findings, if evidence in the

record provided a rational basis for measuring loss without requiring the court to speculate as to the amount, it should have awarded damages in the amount necessary to cover the tractor's proven repair costs.

[¶32.]    First, we assess whether there was a rational basis to award damages for the dead battery. At trial, Robert estimated that the cost to replace the battery would be $700. This figure was not challenged on cross-examination or refuted through opposing counsel's evidence. We conclude this uncontroverted evidence provided the circuit court a reasonable basis on which to award damages for the cost of a new battery without resorting to speculation. Therefore, the circuit court clearly erred by not awarding the Lambs the $700 needed to replace the battery.

[¶33.]    Second, the Lambs argue that Robert's testimony regarding the cost to repair the articulating joint provided a rational basis to award damages in the amount of $7,400. However, the court concluded otherwise when it determined that "the Lambs have failed to meet their burden of proof with respect to the . . . cost of repairs" for the tractor. Robert's estimate of damages for the repair of the articulating joint was based on his recollection of what he claimed some unidentified person, at an unidentified machine shop, told him it would cost to bore holes to repair the articulating joint. Aside from the $300 per hole figure, the rest of Robert's testimony is based on wide-ranging estimates for labor and repair costs. Robert did not present a written estimate, nor did he call the person who purported to give him the figures that he used for his estimate.

[¶34.]    On these facts, the court could have rejected Robert's testimony supporting his estimate, or the court could have found that Robert's estimate

required the circuit court to speculate concerning the cost of repairs. "An award of damages is a factual issue to be determined by the [fact finder]." *Lord v. Hy-Vee Food Stores*, 2006 S.D. 70, ¶ 31, 720 N.W.2d 443, 454 (citing *Roth v. Farner-Bocken Co.*, 2003 S.D. 80, ¶ 26, 667 N.W.2d 651, 662). The circuit court did not clearly err in finding that the Lambs did not prove their claim for damages for the articulating joint.

[¶35.]     Third, we determine there was no rational basis to support an award of damages for the hitch pin. While the circuit court and both parties acknowledged that the hitch pin was damaged, it does not appear, from the record, that the Lambs provided any information regarding the cost of replacing the hitch pin. Without evidence addressing the cost of a new hitch pin, the circuit court would have no basis for measuring the loss with reasonable certainty and would have to speculate as to an appropriate damages amount. For this reason, the circuit court did not err by awarding zero damages for the hitch pin.

[¶36.]     Accordingly, we remand the matter back to the circuit court for the sole purpose of entering an order awarding damages for the battery consistent with this opinion.

[¶37.]     Affirmed in part, reversed in part.

[¶38.]     JENSEN, Chief Justice, and SALTER, DEVANEY, and MYREN, Justices, concur.